**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

KATHLEEN STONE

                Plaintiffs,

      v.

PRESIDENT AND FELLOWS OF
HARVARD COLLEGE, and JOHN AND
JANE DOES 1-50,

             Defendants.

Civil Action No. 24-cv-11897-JCB

**PRESIDENT AND FELLOWS OF HARVARD COLLEGE'S
<u>MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS</u>**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................................1

FACTUAL BACKGROUND .....................................................................................................2

    A.    Stone's Role as Head Coach of the Women's Ice Hockey Team Is Mired by Compounding Concerns Regarding Her Performance and Leadership. .................2

    B.    Harvard Learns of Additional Allegations Against Stone Published in Press .........3

    C.    Harvard Declines to Bring Stone Back as Head Coach for the 2023-24 Season .....6

    D.    Stone's Allegations Concerning the Conduct of Male Student-Athletes ................6

    E.    Stone Alleges Reports of Misconduct by One Male Coach and Acknowledges Harvard's Termination of His Employment ...........................................................7

    F.    Stone Never Complains of Gender Discrimination While Employed at Harvard ...7

LEGAL STANDARD ..................................................................................................................8

ARGUMENT ..............................................................................................................................8

I.    Stone's Claims Should Be Dismissed Because They Are Time-Barred ............................8

    A.    Stone's Claims of Gender Discrimination and Retaliation Based on Events Occurring Prior to March 2023 Are Time-Barred ...................................................8

    B.    Claims Under the Federal Equal Pay Act and Massachusetts Act to Establish Pay Equity Should Be Dismissed Because They Are Time-Barred ............................11

II.    Stone's Remaining Claim of Retaliation Under Title VII and Chapter 151B Should Be Dismissed for Failure to State a Claim ...........................................................................13

    A.    The Allegations Regarding the January 28, 2023 "Remarks" Do Not Adequately Plead Protected Activity .....................................................................................14

    B.    Stone Does Not Allege Any Causal Connection Between Her Purported Pay Advocacy in 2017 and 2018 and Her Departure from Harvard in 2023 ...............15

III.    Stone's Remaining Claim of Gender Discrimination Under Title VII and Chapter 151B Should Be Dismissed for Failure to State a Claim ..........................................................18

CONCLUSION ...........................................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ahmed v. Mass. Bay Transp. Auth.*,
  No. 18-cv-10847-ADB, 2020 U.S. Dist. LEXIS 161407 (D. Mass. Sep. 3,
  2020) ...................................................................................................................17

*AMTRAK. v. Morgan*,
  536 U.S. 101, 122 S. Ct. 2061 (2002) .........................................................9, 10, 13

*Ashcroft v. Iqbal*,
  556 U.S. 662, 129 S. Ct. 1937 (2009) .................................................................18

*Ayala v. Shinseki*,
  780 F.3d 52 (1st Cir. 2015) ...................................................................................10

*Brinig v. Ill. Cent. Sch. Bus, LLC*,
  No. 17-12482-RGS, 2019 U.S. Dist. LEXIS 31273 (D. Mass. 2019) ....................20

*Chan v. Baker*,
  No. 20-cv-11449, 2021 U.S. Dist. LEXIS 175240 ................................................16

*Crawford v. Salve Regina Univ.*,
  No. 1:23-CV-00380-MSM-PAS, 2024 U.S. Dist. LEXIS 107842 (D.R.I. June
  18, 2024) .........................................................................................................18, 20

*Downey v. Johnson*,
  No. 1884CV01875-C, 2021 Mass. Super. LEXIS 468 (Mass. Super. Ct.,
  Suffolk Cnty., Oct. 1, 2021).................................................................................20

*Eissa v. Ledvance LLC*,
  626 F. Supp. 3d 209 (D. Mass. 2022) ...................................................................10

*Fantini v. Salem State Coll*ege,
  557 F.3d 22 (1st Cir. 2009).............................................................................14, 15

*Freadman v. Metro. Prop. & Cas. Ins. Co.*,
  484 F. 3d 91 (1st Cir. 2007).................................................................................17

*Frith v. Whole Foods Mkt., Inc.*,
  38 F.4th 263 (1st Cir. 2022)......................................................................... *passim*

*Haley v. City of Boston.*,
  657 F.3d 39 (1st Cir. 2011)...................................................................................4

*Hussey v. City of Cambridge*,
  Civil Action No. 21-CV-11868-AK, 2022 U.S. Dist. LEXIS 185303 (D. Mass.
  Oct. 11, 2022) ..........................................................................................................4

*Jahour v. Mass. Bay Transp. Auth.*,
  2024 U.S. Dist. LEXIS 23086 (D. Mass. Feb. 9, 2024) ..........................................9

*James v. Cox*,
  No. 21-cv-12098-AK, 2022 U.S. Dist. LEXIS 130204 (D. Mass. July 22,
  2022) ..................................................................................................................16, 17

*Johnson v. Univ. of P.R.*,
  714 F.3d 48 (1st Cir. 2013) ....................................................................................10

*Khan v. Sedgwick Claims Mgmt. Servs., Inc.*
  2023 U.S. Dist. LEXIS 116686 (D. Mass. July 7, 2023) ..........................................9

*Krua v. Price*,
  No. 21-cv-11061-AK, 2023 U.S. Dist. LEXIS 8377 (D. Mass. Jan. 18, 2023) ......................12

*Lee v. Howard Hughes Med. Inst.*,
  607 F. Supp. 3d 52 (D. Mass 2022) ......................................................................11

*Lima v. Middlesex Sheriff´s Office*,
  No. 19-11372-RGS, 2020 U.S. Dist. LEIXS 28047 (D. Mass February 19,
  2020) .....................................................................................................................16

*Madison v. Cruz*,
  393 F. Supp. 3d 135 (D. Mass. 2019) .....................................................................4

*Marcinuk v. Lew*,
  2016 U.S. Dist. LEXIS 3092 (D. Mass. Jan. 11, 2016) ..........................................17

*McIntosh v. Mass. Bay Transp. Auth.*,
  2024 U.S. Dist. LEXIS 93724 (D. Mass. 2024) ......................................................9

*Mendes v. WinnCompanies LLC*,
  No. 23-10417-FDS, 2023 U.S. Dist. LEXIS 222583 (D. Mass. Dec. 14, 2023) ......................9

*Mole v. Univ. of Mass.*,
  442 Mass. 582 (2004) ............................................................................................17

*Morales-Cruz v. Univ. of P.R.*,
  676 F.3d 220 (1st Cir. 2012) ..........................................................................8, 14, 19

*Morris v. Boston Edison Co.*,
  942 F. Supp. 65 (D. Mass. 1996) ...........................................................................14

*Poon v. Mass. Inst. of Tech.*,
    74 Mass. App. Ct. 185 (2009) ............................................................................16

*Rae v. Woburn Pub. Sch.*,
    No. 23-1432, 2024 U.S. App. LEXIS 21252 (1st Cir. Aug. 22, 2024) ...............9, 10

*Silvestris v. Tantasqua Reg'l Sch. Dist.*,
    446 Mass. 756, 847 N.E.2d 328 (2006) ..............................................................13

*Stanton v. Metro Corp.*,
    438 F.3d 119 (1st Cir. 2006) (considering news article attached to defendant's
    motion to dismiss) ................................................................................................4

*Thornton v. Macy's Retail Holdings, Inc.*,
    No. 20-40045-DHH, 2021 U.S. Dist. LEXIS 76362 (D. Mass. Mar. 5, 2021) .........9

*Thornton v. Macy's Retail Holdings, Inc.*,
    No. 20-40045-DHH, 2021 U.S. Dist. LEXIS 76379 (D. Mass. Mar. 23, 2021) .......9

*Waldo v. Town of Brookline*,
    2012 Mass. Super. LEXIS 265 (Mass. Super. Ct., Norfolk Cnty. 2012) ...............12

*Watterson v. Page*,
    987 F.2d 1 (1st Cir. 1993) ....................................................................................4

*United States ex rel. Winkelman v. CVS Caremark Corp.*,
    827 F.3d 201 (1st Cir. 2016) ................................................................................4

*Woods v. Covidien LP*,
    No. 15-30094-MGM, 2016 U.S. Dist. LEXIS 62419 (D. Mass. May 10, 2016) ...........12, 15

**Statutes**

29 U.S.C. § 255(a) ..............................................................................................12

42 USCS § 2000e-3 .............................................................................................14

804 Mass. Code Regs. 1.04(3) .............................................................................8

G.L. c. 151 B, § 4(4) ...........................................................................................14

G.L. c. 151 B, § 5 ................................................................................................8

**Other Authorities**

*2003 Mass. Comm. Discrim. LEXIS 89* ..............................................................12

*An Act to Establish Pay Equity: Overview and Frequently Asked Questions*,
   Office of the Attorney General (https://www.mass.gov/doc/ago-equal-pay-act-
   guidance-5-2-18/download)...................................................................................12

Fed. R. Evid. 201 ...........................................................................................................5

*Hazing, Naked Skates and a 'mental health Hunger Games': The dark side of
   Harvard women's ice hockey*, The Athletic, March 10, 2023.....................................5

*Time Limits for Filing a Charge*, U.S. Equal Employment Opportunity
   Commission (https://www.eeoc.gov/time-limits-filing-charge).............................12

## PRELIMINARY STATEMENT

Plaintiff Kathleen Stone agreed to retire from her position as head coach of Harvard's Women's Ice Hockey Team in June 2023 after a litany of serious allegations concerning her conduct and leadership as head coach were widely publicized in investigative reports by *The Boston Globe* and *The Athletic*. The central grievance of Stone's Complaint is that Harvard forced her to retire, which she now claims, through thin and conclusory allegations, was motivated by discriminatory or retaliatory animus. Stone also makes vague and conclusory allegations that she was underpaid as compared to her male counterparts dating back to 2017 — seven years prior to filing her Complaint. Stone's claims are largely untimely and without merit and should therefore be dismissed.

*First*, most of Stone's allegations concern purported conduct and events that are well outside the applicable statutes of limitations. The majority of Stone's federal and state claims of gender discrimination and retaliation are based on events occurring outside Massachusetts's 300-day limitations period and should readily be dismissed. Stone filed an administrative charge on January 3, 2024, which renders any claims of discrimination or retaliation arising from allegations occurring prior to March 9, 2023 untimely. Further, Stone's purported pay claims are primarily based on allegations from 2017 and 2018, reaching years beyond the applicable statutes of limitations of two or three years. Stone's claims under the Federal Equal Pay Act related to pay that occurred prior to July 2022 and her claims under the Massachusetts Act to Establish Pay Equity that occurred prior to July 2021 are time-barred and should be dismissed.

*Second*, Stone's non-time-barred state and federal claim for retaliation should be dismissed because the Complaint does not plausibly allege any protected activity causally connected to her departure from Harvard in June 2023. Stone's attempt to convert a stray comment criticizing the media's coverage of her into "protected activity" defies common sense

1

and does not pass muster even at the pleading stage. And, to the extent that Stone's purported "advocacy for equal pay" in 2017 and 2018 serve as the basis of her retaliation claim, she has not alleged a causal connection that satisfies the plausibility standard.

*Third*, Stone's state and federal claim of gender discrimination based on her separation from Harvard in June 2023 should be dismissed because, even considered in the light most favorable to Stone, the factual allegations in the Complaint do not plausibly point in the direction of discrimination and away from the "obvious alternative explanation" that Stone was separated from Harvard due to mounting concerns regarding her conduct as head coach — concerns that were widely publicized. Indeed, the few factual allegations that Stone does include in her Complaint either undermine or are entirely irrelevant to her claim of gender discrimination.

For the reasons set forth in further detail below, Stone's retaliation and gender discrimination claims should be dismissed in their entirety and Stone's federal and state pay claims should be largely dismissed as time-barred.

## PLANTIFF'S FACTUAL ALLEGATIONS

### A. Stone's Role as Head Coach of the Women's Ice Hockey Team Is Mired by Concerns Regarding Her Performance and Leadership

The President and Fellows of Harvard College ("Harvard" or "the University") formerly employed Plaintiff Stone as the head coach of its Division I Women's Ice Hockey Team (the "Team").[1] Compl., ¶ 1. Stone served as head coach of the Team from the 1994-95 season through the 2022-23 season. *Id.* at ¶¶ 26, 124. During this time, the Team enjoyed some competitive success. *Id.* at ¶ 28. However, beginning in 2020 and compounding through 2023, current and former student-athletes, parents, and staff raised, through various channels, multiple

---

[1] Havard accepts the allegations as true solely for the purposes of this motion; however, Harvard reserves the right to dispute the allegations made therein at later proceedings.

concerns and allegations regarding Stone's conduct and leadership as head coach and the team culture she fostered. *See id.* at ¶¶ 45-47, 51-52, 56, 58, 64, 80, 88-89.

First, in 2020, Harvard Athletics conducted a student-athlete experience review (the "Mercer Study") and received feedback from players on the Women's Ice Hockey Team showing low levels of satisfaction. *Id.* at ¶ 52, 56. This raised a red flag concerning the culture of the Team and Stone's leadership. *Id.* at ¶ 58. Second, in March 2022, Stone made an inappropriate and culturally insensitive comment while addressing the Team. Stone used the phrase: "too many chiefs and not enough Indians" while speaking to her players in the locker room (the "March 5 Incident"). *Id.* at ¶ 47. Afterwards, Stone's assistant coach, Sydney Daniels, submitted a complaint against Stone. *Id.* at ¶ 50.

Harvard's Human Resources Department commenced an investigation into the March 5 Incident and the allegations against Stone (the "HR Investigation"), which was completed around July 6, 2022. *Id.* at ¶ 47, 62. Separately, and due to concerns raised by student-athletes, including through the Mercer Study and other channels, Harvard commenced an independent student-athlete experience review for the Women's Ice Hockey Team (the "Student-Athlete Review"), which was also completed in early July 2022. *See id.* at ¶ 51, 61.

Around July 13, 2022, Harvard placed Stone on a Performance Improvement Plan ("PIP") to address the concerns that players had raised about her conduct. *Id.* at ¶¶ 63-64. The PIP noted several areas of Stone's performance that needed improvement and Harvard required Stone to attend regular monthly meetings with her supervisor as part of the implementation of her PIP. *Id.* at ¶ 66-67.

**B.    Harvard Learns of Additional Allegations Against Stone Published in Press**

On the heels of Harvard completing the Student-Athlete Review and the HR Investigation, and placing Stone on a PIP, Harvard learned of additional concerning allegations

regarding Stone's conduct as head coach and the team culture through an investigative report

published by *The Boston Globe* on January 27, 2023 (the "Globe Article"). *Id.* at ¶ 80. The Globe

Article, titled "'*A culture of complete fear': Harvard women's hockey coach Katey Stone under*

*fire for alleged abusive behavior*," contained detailed allegations of abusive conduct by Stone

from interviews with 16 former players.[2] Ex. 1. The allegations included:

- **Leading "I hate" chants.** Stone led and encouraged the Team to join in an "I hate [player's name]" chant when a player arrived late for practice from a medical appointment.

- **"Negative motivation.** Each of the 16 players said Stone denigrated them or their teammates in ways that made them demoralized, anxious, confused, or seeking mental health support."

- **"Insensitivity to mental health issues.** Stone was described by numerous former players as having little tolerance for those confronting emotional challenges."

- **"Pressure to return from concussions and other injuries.** Several players said Stone downplayed the severity of their traumatic brain injuries or other physical ailments by pressuring them to return too soon or to play through excessive pain."

- **"Body shaming.** Several players reported developing eating disorders after Stone

---

[2] The court may consider the contents of the Globe Article on a motion to dismiss because the Complaint repeatedly references the article and through judicial notice because its authenticity cannot be reasonably disputed. *See United States ex rel. Winkelman v. CVS Caremark Corp.*, 827 F.3d 201, 208 (1st Cir. 2016) (holding court may properly consider press releases, news articles and other publicly available records in reviewing a motion to dismiss because "within the Rule 12(b)(6) framework, a court may consider matters of public record and facts susceptible to judicial notice"); *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993) (noting that courts may consider "documents the authenticity of which are not disputed by the parties," "official public records," "documents central to [the plaintiff's] claims," and "documents sufficiently referred to in the complaint" when evaluating a motion to dismiss); *Hussey v. City of Cambridge*, Civil Action No. 21-CV-11868-AK, 2022 U.S. Dist. LEXIS 185303, at *8 n.4 (D. Mass. Oct. 11, 2022) (taking judicial notice of two news articles, one of which was referenced in the plaintiff's complaint); *Stanton v. Metro Corp.*, 438 F.3d 119, 123 (1st Cir. 2006) (considering news article attached to defendant's motion to dismiss); *Madison v. Cruz*, 393 F. Supp. 3d 135, 137 n.2 (D. Mass. 2019) (noting that "[o]ther courts have also taken judicial notice of newspaper articles and press releases . . . when their conten[t]s cannot be reasonably questioned"); *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011) (holding that on motion to dismiss the court "may augment these facts and inferences with data points gleaned from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice") (cleaned up).

harshly criticized their physiques as too thin or too heavy."

- **"Contradictory disciplinary standards."** This related to Stone's practice of doling out inconsistent discipline for drinking infractions depending on the player.

- **"Hazing**. As long ago as 2000 and as recently as 2016, Stone's first-year players were subjected to initiation practices that included mandatory costume-wearing across campus, forced alcohol drinking, and role playing with sexual overtones…."

Shortly after the Globe Article was published, Stone and the Director of Athletics, Erin McDermott, had a phone call about the press coverage. Compl., ¶ 82. In the context of this call, Stone allegedly "remarked that she would not have been or continue to be treated the way that she had been up to that point had she been a man" and McDermott allegedly responded, "this wouldn't be happening to a men's coach." *Id.* at ¶ 83-84.

Six weeks later, on March 10, 2023, *The Athletic*, a sports journalism arm of *The New York Times*, published a second exposé detailing even further allegations against Stone (the "Athletic Article").[3] The article included interviews with more than 30 individuals associated with the Women's Ice Hockey program, including former players, and contained additional concerning reports about Stone's conduct as head coach and the negative culture she fostered. *The Athletic*'s reporting included:

- Allegations by seven players that, during at least three seasons, Stone led the Team in "I hate [player's name]" chants as punishment for infractions.

- Allegations by eleven players that "Stone showed indifference to injuries they or others suffered."

- Allegations of Stone making a racially insensitive comment to a player from Japan.

- Allegations that Stone created divisiveness and mistrust among the Team, pitted players against each other, and "favored a climate in which players were constantly

---

[3] Ex. 2 (*Hazing, Naked Skates and a 'mental health Hunger Games': The dark side of Harvard women's ice hockey*, The Athletic, March 10, 2023). The court may take judicial notice of the Athletic Article because the fact of the article "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Federal Rule of Evidence 201; *see also supra*, n. 2.

on edge."

- Allegations that Stone repeatedly body shamed student-athletes, including by requiring one player to "down protein shakes while team captains supervised."

The Athletic Article also reported on the negative impact that Stone's conduct had on players. At least three student-athletes reported developing an eating disorder while playing for Stone. Ex. 2 at 6. One player reported that "[t]he whole team was centered around shame," another player described feelings of "worthlessness," and a third described feelings of depression. *Id.* at 10. One parent of a player from a recent season called the team under Stone's leadership "a mental-health Hunger Games." *Id.* at 5.

**C.    Harvard Declines to Bring Stone Back as Head Coach for the 2023-24 Season**

As a result of the serious allegations that publicly surfaced in early 2023, including through the Globe Article and the Athletic Article, Harvard informed Stone that it did not intend to bring her back for the 2023-24 season. *Id.* at ¶ 124. Stone subsequently agreed to retire from Harvard, effective June 30, 2023. *Id.* at ¶ 125. Stone's retirement was announced on June 6, 2023. *Id.* at ¶ 126.

**D.    Stone's Allegations Concerning the Conduct of Male Student-Athletes**

Stone's Complaint contains several allegations regarding conduct by male student-athletes. She asserts that the "Men's Swimming and Diving Team engage in jumping from their diving board 'naked'" and that "[u]pon information and belief, Harvard has taken no action regarding this information." *Id.* at ¶ 95. Stone also alleges "upon information and belief" that "male athletes engage in 'Primal Scream' before examinations, which also involved nudity." *Id.* at ¶ 96.  Stone also claims that "the University's men's soccer team came under investigation in 2016 after it was reported that team members" had shared a document ranking the members of the female soccer team. *Id.* at ¶ 105. This incident involved alleged conduct by players on the

men's soccer team and the University suspended the remainder of the team's season. *Id.* at ¶105-106. Student-athletes on Harvard's men's cross-country team allegedly also engaged in "ranking female athletes." *Id.* at ¶ 107.

**E.    Stone Alleges Reports of Misconduct by One Male Coach and Acknowledges Harvard's Termination of His Employment**

Stone's Complaint concedes that Harvard took action in response to allegations of personal misconduct by a male coach, terminating his employment, just as Harvard terminated Stone's employment. First, Stone admits in her Complaint that the coaches of the men's teams that are the subject of many of her allegations were never accused of misconduct themselves. *Id.* at ¶¶ 106-109. Second, Stone references a single instance of allegations of misconduct by a male coach, as opposed to conduct of student-athletes, and acknowledges that Harvard took action against that coach. *Id.* at ¶ 110. In particular, after a series of reports that Coach Wales-Dinan had engaged in behavior that might be characterized as "abusive" and a video of his behavior became public, Harvard ended his position as head coach in 2017, less than three years after hiring him. *See id.* at ¶¶ 111; 114-16.

**F.    Stone Never Complains of Gender Discrimination While Employed at Harvard**

Other than vague allegations concerning her purported advocacy for pay transparency and parity in 2017 and 2018—six to seven years ago—Stone makes no allegations that she complained of gender discrimination while employed at Harvard. *See id.* at ¶¶ 33-36. Stone never lodged a complaint of gender discrimination while employed at Harvard nor did she raise any concerns of discrimination in connection with the Student-Athlete Review or the HR Investigation. When Harvard informed Stone that it would not extend her position as head coach for another season and offered her the opportunity to retire in the face of numerous public allegations against her, Stone accepted Harvard's offer to retire and worked with it on a public

statement that honored Stone and her career.

On January 3, 2024, Stone filed a charge with the Massachusetts Commission Against Discrimination ("MCAD") alleging gender discrimination and retaliation. The MCAD Charge contains substantially similar allegations to those set forth in the Complaint. *Id.* at ¶ 24. Stone subsequently withdrew her charge from the MCAD and brought this action. *Id.*

## LEGAL STANDARD

"[T]o survive a motion to dismiss, a complaint's factual allegations must be enough to raise a right to relief above the speculative level." *Frith v. Whole Foods Mkt., Inc.*, 38 F.4th 263, 269-70 (1st Cir. 2022) (cleaned up). "Plausibility is the touchstone by which the sufficiency of a complaint is gauged." *Morales-Cruz v. Univ. of P.R.*, 676 F.3d 220, 224 (1st Cir. 2012). The court "must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." *Morales-Cruz*, 676 F.3d at 224. Accordingly, where "the factual allegations in a complaint, stripped of conclusory legal allegations, raise no more than a sheer possibility that a defendant has acted unlawfully, the complaint should be dismissed." *Frith*, 38 F.4th at 270. The court's assessment of plausibility is a "context-specific task" in which the court draws on its experience and common sense. *Id.*

## ARGUMENT

**I.    Stone's Claims Should Be Dismissed Because They Are Time-Barred**

A.    Stone's Claims of Gender Discrimination and Retaliation Based on Events Occurring Prior to March 2023 Are Time-Barred

Under Chapter 151B and corresponding federal law, a plaintiff must file a charge of discrimination with the MCAD within 300 days of the alleged unlawful employment practice. *See* G.L. c. 151B, § 5; 804 Mass. Code Regs. 1.04(3); *Rae v. Woburn Pub. Sch.*, No. 23-1432, 2024 U.S. App. LEXIS 21252, at *15 (1st Cir. Aug. 22, 2024). Courts in this district regularly

grant motions to dismiss untimely claims under Chapter 151B and Title VII. *See, e.g.*, *Mendes v. WinnCompanies LLC,* No. 23-10417-FDS, 2023 U.S. Dist. LEXIS 222583, at *15 (D. Mass. Dec. 14, 2023) (dismissing claims that primarily arose out of events occurring outside the 300-day period as time-barred); *Jahour v. Mass. Bay Transp. Auth.,* 2024 U.S. Dist. LEXIS 23086, at *2 (D. Mass. Feb. 9, 2024); *Rae,* 2024 U.S. App. LEXIS 21252, at *25 (1st Cir. Aug. 22, 2024); *Khan v. Sedgwick Claims Mgmt. Servs., Inc.* 2023 U.S. Dist. LEXIS 116686, at *23 (D. Mass. July 7, 2023); *McIntosh v. Mass. Bay Transp. Auth.*, 2024 U.S. Dist. LEXIS 93724, at *12 (D. Mass. 2024); *Thornton v. Macy's Retail Holdings, Inc.*, No. 20-40045-DHH, 2021 U.S. Dist. LEXIS 76362, at *19-20 (D. Mass. Mar. 5, 2021), adopted by 2021 U.S. Dist. LEXIS 76379, at *1 (D. Mass. Mar. 23, 2021).

Stone filed a charge with the MCAD on January 3, 2024. Accordingly, the 300-day statute of limitation bars any claims of discrimination or retaliation arising from allegations occurring prior to March 9, 2023. As set forth in more detail below, a host of the allegations in the Complaint fall outside the limitations period and, therefore, cannot serve as the basis for any claims of discrimination or retaliation.

First, any claims of discrimination or retaliation based on the HR Investigation or Student-Athlete Review, which were both completed in July 2022, are time-barred and cannot be saved by the continuing violations doctrine. Stone's complaint is based on discrete acts of alleged gender-motivated discrimination, namely Harvard's decision to commence the Student-Athlete Review and, separately, the HR Investigation in response to the March 5 Incident. As the Supreme Court has held and courts in this jurisdiction have confirmed, allegations of individual acts are not subject to the continuing violations doctrine. In *AMTRAK. v. Morgan*, the Supreme Court explained that "[e]ach incident of discrimination and each retaliatory adverse employment

decision constitutes a separate actionable 'unlawful employment practice'" and that "discrete discriminatory acts are not actionable if time-barred, even when they are related to acts alleged in timely filed charges." 536 U.S. 101, 113 (2002); *see also Rae,* 2024 U.S. App. LEXIS 21252, at *25 (1st Cir. Aug. 22, 2024) (holding continuing violations doctrine did not save time-barred claims based on "related discrete acts"); *Eissa v. Ledvance LLC*, 626 F. Supp. 3d 209, 213 (D. Mass. 2022) (holding that continuing violations doctrine did not apply to discrimination claim under ch. 151B and Title VII because the alleged failure to accommodate plaintiff's request for leave was the kind of discrete act which Massachusetts courts have held not to constitute a continuing violation).

The "classic example of a continuing violation is a hostile work environment," which is "different in kind" from claims involving discrete acts because claims of a hostile environment "by their nature involve repeated conduct and a single act of harassment may not be actionable." *Johnson v. Univ. of P.R.*, 714 F.3d 48, 53 (1st Cir. 2013); *see also Ayala v. Shinseki*, 780 F.3d 52, 57 (1st Cir. 2015) (holding that continuing violations did not apply where plaintiff did not allege a hostile work environment because the doctrine "applies only to claims that cannot be said to occur on a particular day and that by their very nature require repeated conduct to establish an actionable claim, such as hostile work environment claims"). Here, Stone does not allege a hostile work environment or ongoing harassment, but rather alleges that particular discrete events — Harvard's decision to commence the Student-Athlete Review and HR Investigation, and ultimately its decisions to discharge Stone — were discriminatory. Thus, the continuing violations doctrine does not save her time-barred discrimination claim, whether under Title VII or Chapter 151B.

Second, to the extent Stone alleges claims for pay discrimination under Chapter 151B for

events that occurred prior to March 9, 2022, those claims are also time-barred. Stone vaguely alleges that she advocated for pay transparency and parity "in or around the beginning of 2017" and references "efforts of the University's female coaches" regarding the coach compensation model announced in 2018. Compl., ¶¶ 33-37. Stone's own assertions acknowledge that she was on notice of any alleged pay discrimination she now complains of as early as 2017, placing her claims well outside that statute of limitations. *See id.* at ¶¶ 33-35; *Lee v. Howard Hughes Med. Inst.*, 607 F. Supp. 3d 52, 67 (D. Mass 2022) (holding that plaintiff's pay discrimination claim under 151B was time-barred because she was put on sufficient notice of her injury by a date outside of the 300-day statute of limitations). Stone's pay discrimination claims under 151B are also not subject to the "continuing violations" doctrine. *Lee*, 607 F. Supp. 3d at 67 ("while Massachusetts courts have concluded that some kinds of discrimination claims, such as those alleging a hostile work environment, concern a wrong of a unitary, continuing nature and thus are timely if any part of that wrong occurred within the limitations period, pay claims, which 'give rise to a cause of action each time they occur and are easily identifiable', do not.") (cleaned up).

The Court should, therefore, dismiss Stone's claims for discrimination and retaliation under both Title VII and Chapter 151B that are based on allegations prior to March 9, 2023.

> B.    Claims Under the Federal Equal Pay Act and Massachusetts Act to Establish Pay Equity Should Be Dismissed Because They Are Time-Barred

Stone makes conclusory allegations that she was underpaid as compared to her male counterparts dating back to 2017, seven years prior to filing her Complaint and brings claims under the Federal Equal Pay Act ("EPA") and the Massachusetts Act to Establish Pay Equity ("MEPA"). Stone's EPA claims related to pay that occurred prior to July 2022—two years

before she filed her Complaint[4]—and her claims under MEPA related to pay that occurred prior to July 2021—three years prior to the Complaint[5]—are time-barred and should be dismissed.

A cause of action under the EPA "shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). An employee must file a MEPA claim within three years of the violation, which occurs when the discriminatory compensation decision is made. *Waldo v. Town of Brookline*, 2012 Mass. Super. LEXIS 265, *4 (Mass. Super. Ct., Norfolk Cnty. 2012).

Stone's EPA claims are subject to the two-year limitations period because she does not allege that Harvard engaged in a willful violation of the EPA, nor does she allege any facts sufficient to infer willfulness. *See Woods*, 2016 U.S. Dist. LEXIS 62419, at *16-17 (dismissing EPA claims as time-barred where the complaint did not allege "sufficient facts that would suggest a willful violation," rendering plaintiff's claims untimely); *see also Krua v. Price*, No. 21-cv-11061-AK, 2023 U.S. Dist. LEXIS 8377, at *21 (D. Mass. Jan. 18, 2023) (dismissing EPA claim where the complaint referenced only one employee of a different sex "within two, or even

---

[4] Stone commenced this lawsuit on July 23, 2024. The EPA mandates that claims be brought within two years of the alleged violation by the filing of a lawsuit. Filing a discrimination charge with an administrative agency does not extend the two-year time limit for EPA claims. *Woods v. Covidien LP*, No. 15-30094-MGM, 2016 U.S. Dist. LEXIS 62419, at *14 (D. Mass. May 10, 2016) (finding plaintiff's EPA claim was untimely where discriminatory action occurred two and a half years prior to the filing of plaintiff's lawsuit); *Time Limits for Filing a Charge*, U.S. Equal Employment Opportunity Commission (https://www.eeoc.gov/time-limits-filing-charge) ("Filing a Title VII charge [with the EEOC] will not extend the deadline for filing an EPA lawsuit").

[5] Because the MCAD lacks jurisdiction over claims under MEPA, Stone's MCAD Charge is not relevant for purposes of assessing the statute of limitations. *See 2003 Mass. Comm. Discrim. LEXIS 89* ("The Massachusetts Equal Pay Act, M.G.L. c. 149, sec. 105A-C, was referenced in Respondent's post-hearing brief. That statute is not enforced by the MCAD and thus is not addressed in this decision."); *An Act to Establish Pay Equity: Overview and Frequently Asked Questions*, Office of the Attorney General (https://www.mass.gov/doc/ago-equal-pay-act-guidance-5-2-18/download), p. 16.

three years of the date he filed [the] action").

Stone is not entitled to any equitable tolling for her EPA or MEPA claims. First, it is well-established that the continuing violations doctrine does not apply to EPA or MEPA claims. *AMTRAK*, 536 U.S. 101 (2002); *Silvestris v. Tantasqua Reg'l Sch. Dist.*, 446 Mass. 756, 769-70, 847 N.E.2d 328, 339 (2006). Second, based on Stone's own allegations, she was aware of the purported pay discrimination dating back to 2017 and 2018 but still failed to bring her pay claims in a timely manner. *See Silvestris*, 446 Mass. at 769-70 ("Because pay claims do give rise to a cause of action each time they occur and are easily identifiable, it is not unreasonable to expect a plaintiff to file a charge of discrimination within the limitations period, so long as [the plaintiff] is aware of the discrimination'"). In particular, the Complaint alleges that through discussions in 2017, "it became readily apparent to Coach Stone that she had been egregiously underpaid as compared to her male counterpart" and in 2018, after rolling out the new coach compensation model, "Harvard's administration admitted that the new model did not reach pay equity." Compl., ¶¶ 35, 37.

Accordingly, Stone's claims under MEPA and EPA that fall outside the applicable statute of limitations, including but not limited to any claims arising from Stone's allegations from 2017 and 2018, should be dismissed as time-barred.

## II.    Stone's Remaining Claim of Retaliation Under Title VII and Chapter 151B Should Be Dismissed for Failure to State a Claim

Stone's non-time-barred state and federal claims for retaliation also fail to state a claim for relief because the Complaint does not plausibly allege any protected activity causally connected to her departure from Harvard in June 2023. The Complaint is vague on time and substance regarding the purported protected activity that serves as the basis for her retaliation claim. *See id.* at ¶ 167 ("Coach Stone complained to Defendant Harvard about the discriminatory

and unfair treatment she experienced, including the unfair and disparate pay gap instituted by Harvard."). The Complaint appears to suggest that Stone's protected activity was (1) her "remarks" to McDermott during a January 28, 2023 conversation about the Globe Article; and (2) her purported "advocacy for equal pay" in 2017 and 2018. *Id.* at ¶¶ 33, 36, 82-83.

     A.    <u>The Allegations Regarding the January 28, 2023 "Remarks" Do Not Adequately Plead Protected Activity</u>

Even if taken as true, the allegations regarding Stone's January 28, 2023 "remarks," which occurred in her discussion with McDermott regarding the Globe Article that was published the previous day, do not plausibly plead protected activity as required to state a claim for retaliation.

The legal standard for protected activity is similar under Massachusetts and federal law: (1) opposition to any unlawful employment practice; or (2) participation in a covered proceeding. *See* G.L. c. 151 B, § 4(4); 42 USCS § 2000e-3; *Morris v. Boston Edison Co.*, 942 F. Supp. 65, 69 (D. Mass. 1996); *Fantini v. Salem State Coll*ege, 557 F.3d 22, 32 (1st Cir. 2009) (cleaned up). "While Title VII shields an employee who opposes conduct that may not actually prove to be discriminatory, the employee must at the very least have a good faith, reasonable belief that the underlying challenged actions of the employer violated the law." *Morales-Cruz*, 676 F.3d at 226 (cleaned up).

Accordingly, to survive a motion to dismiss a claim for retaliation, "the pleading must contain plausible allegations indicating that the plaintiff opposed a practice prohibited by Title VII and suffered an adverse employment action as a result of that opposition." *See Morales-Cruz*, 676 F.3d at 226; *see also Frith*, 38 F.4th at 276 ("[E]mployees who seek the protection of Title VII's retaliation provision must allege opposition to some aspect of their employment or the conduct of their employer."); *Fantini,* 557 F.3d at 32 (dismissing retaliation claim where plaintiff

failed to allege that she engaged in protected activity because her complaints to her supervisor "either pointed out discrimination against particular individuals nor discriminatory practices by the Defendants" and therefore she could not have held a "good faith, reasonable belief that the underlying challenged actions of the employer violated the law").

Stone's alleged comment to McDermott on January 28, 2023—that "she would not have been or continue to be treated the way she had been up to that point had she been a man"—is not protected activity. The only plausible, common sense inference that can be drawn from Stone's alleged remark made during a discussion about the Globe Article is that she was criticizing the media's coverage of her. Nothing she supposedly said has any connection to Harvard, let alone constitutes an opposition to any action by Harvard. *See Frith*, 38 F.4th at 270 ("assessing plausibility is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense") (cleaned up); *Woods*, 2016 U.S. Dist. LEXIS 62419, at *5.

Indeed, at the time of this alleged comment, Harvard had not yet taken any action related to Stone's employment in response to the allegations that surfaced in January 2023 (and it was otherwise a year following Harvard's earlier investigations of her). As such, Stone "could not have held a good faith, reasonable belief that" Harvard was violating the law. Stone has failed to state a claim of retaliation because alleging protected activity requires pleading a complaint about alleged violative conduct by Harvard, and here, Stone's own allegations show that her purported "remarks" about the Globe Article were not and could not have plausibly conveyed a complaint about Harvard.

      B.      <u>Stone Does Not Allege Any Causal Connection Between Her Purported Pay Advocacy in 2017 and 2018 and Her Departure from Harvard in 2023</u>

To the extent that Stone's purported "advocacy for equal pay" in 2017 and 2018 serve as the basis of her retaliation claim, she has not alleged a causal connection that satisfies the

plausibility standard. To state a claim for retaliation, a plaintiff must plead facts connecting the alleged adverse action and protect activity. *James v. Cox*, No. 21-cv-12098-AK, 2022 U.S. Dist. LEXIS 130204, at *24 (D. Mass. July 22, 2022) (dismissing retaliation claim where "plaintiffs have failed to state a causal connection" between termination and protected activity); *Chan v. Baker*, No. 20-cv-11449, 2021 U.S. Dist. LEXIS 175240 *12 (dismissing retaliation claim where plaintiff had "not alleged any facts suggesting a causal connection between the payment delay and his filing of the MCAD complaint."); *Lima v. Middlesex Sheriff's Office*, No. 19-11372-RGS, 2020 U.S. Dist. LEIXS 28047, at *17 (D. Mass February 19, 2020) (dismissing plaintiff's ADA retaliation claim, which adheres to the same analysis as Title VII claims, where plaintiff failed to plead sufficient facts for the court to infer a causal connection between protected activity and his termination).

The only factual allegations concerning Stone's purported advocacy for pay equity are: (1) in 2017, Stone advocated for pay transparency and equity between male and female coaches and had "numerous conversations with various members of Defendant Harvard's Athletic Department and administration regarding Defendant Harvard's anticipated efforts to bring compensation levels of male and female coaches into compliance with the new law"; and (2) in 2018, after Harvard introduced a new model for coach compensation, Stone and others "continued to raise concerns and place pressure" on Harvard to reach pay equity. Compl., ¶¶ 33-34, 36.

These alleged instances occurred years prior to Stone's retirement in June 2023 and lack any temporal proximity to her departure that would support a plausible inference of causality. *See, e.g.*, *Poon v. Mass. Inst. of Tech.*, 74 Mass. App. Ct. 185, 200 (2009) ("A substantial interim between the protected conduct and the alleged retaliation can stretch the inference of a causal

connection to the breaking point."); *Mole v. Univ. of Mass.*, 442 Mass. 582, 595 (2004) (collecting cases where no inference of retaliation could be drawn because adverse action followed protected conduct by four months to two years).

Moreover, Stone does not allege with whom at Harvard she had conversations concerning pay equity, nor that those individuals had any role in Harvard's decision to part ways with Stone in June 2023. *James*, 2022 U.S. Dist. LEXIS 130204, at *24-25 (dismissing retaliation claim where plaintiff did not allege that the defendants "were the ones to decide to terminate him"). The notable absence of these allegations further undercuts a plausible inference that her 2017 and 2018 activity is casually connected to her retirement.

Finally, the face of the Complaint shows that significant intervening events occurred between Stone's purported activity in 2017 and 2018 and her retirement in 2023, further barring a plausible inference of causal connection. *See Ahmed v. Mass. Bay Transp. Auth.*, No. 18-cv-10847-ADB, 2020 U.S. Dist. LEXIS 161407, at *20 (D. Mass. Sep. 3, 2020) (holding that intervening acts sever the causal connection); *Marcinuk v. Lew*, 2016 U.S. Dist. LEXIS 3092, at *6 (D. Mass. Jan. 11, 2016)("[c]ourts hold that intervening events undercut claims of causation"). The allegations show that Harvard responded positively to Stone's purported activity by revising the coaching pay model first in 2018, and again in 2022, resulting in an increase to Stone's salary of over $100,000. *See* Compl. ¶¶ 36, 42; *Freadman v. Metro. Prop. & Cas. Ins. Co.*, 484 F. 3d 91, 101 (1st Cir. 2007) (holding that defendant's interim positive treatment of plaintiff, including salary increases, were sufficient to break causal chain for retaliation claim). The Complaint also sets forth several intervening events concerning Stone's performance and conduct, including the negative results of the Mercer Study, Stone's racially insensitive comment on March 5, 2022, the HR Investigation, the Student-Athlete Review,

Stone's placement on a PIP in September 2022, and the litany of allegations against Stone that came to light in early 2023. Compl., ¶¶ 45-47, 56, 58, 63-64, 80.

The allegations in the Complaint do not support, and, in fact, undermine, a plausible inference of a causal connection between Stone's purported activity in 2017 and 2018 and her departure from Harvard years later. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937, 1950 (2009) ("where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"). Stone's retaliation claim should, therefore, be dismissed.

III.    **Stone's Remaining Claim of Gender Discrimination Under Title VII and Chapter 151B Should Be Dismissed for Failure to State a Claim**

Stone's state and federal claim of gender discrimination based on her separation from Harvard in June 2023, which is the sole basis that post-dates March 9, 2023, should be dismissed because the factual allegations in the Complaint undermine her claim of gender discrimination or are entirely irrelevant to such claim.

"A complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face." *Frith*, 38 F.4th at 270 (cleaned up). A claim for discrimination fails where the alleged facts "even considered in the light most favorable to [the plaintiff], support an obvious alternative explanation." *Frith*, 38 F.4th at 274 (dismissing race discrimination claim where allegations supported that Defendant was targeting "Black Lives Matter" for non-race-based reasons rather than targeting employees "because of" their race); *see also Crawford v. Salve Regina Univ.*, No. 1:23-CV-00380-MSM-PAS, 2024 U.S. Dist. LEXIS 107842, at *21 (D.R.I. June 18, 2024) ("The Court need not infer invidious discrimination when faced with an 'obvious alternative explanation' for the conduct at issue.").

Here, Stone does not plead sufficient factual allegations "pointing in [the direction of

gender discrimination] and away from the 'obvious alternative explanation'" that Harvard discontinued her employment based on the mountain of allegations against her that surfaced and were widely publicized in early 2023, just as it had done with a prior male coach. *See Frith*, 38 F.4th at 275. While Stone makes conclusory allegations suggesting that she was treated less favorably than similarly situated male coaches, *see, e.g.*, Compl., ¶¶8-9, 94, 128, she offers no factual allegations to support these assertions. *Morales-Cruz*, 676 F.3d at 225 (cleaned up) ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"). Stone makes allegations regarding a single male comparator in her Complaint, Wales-Dinan, and concedes that he was terminated from Harvard after a series of reports of coaching misconduct. Compl., ¶116. These allegations undermine rather than support Stone's claim of discrimination. As with Coach Wales-Dinan, Stone was the subject of a series of allegations and concerns about her misconduct as head coach, which escalated in the following months, and ultimately culminated in her separation from Harvard. Stone's Complaint shows that Harvard's response to escalating reports of her coaching misconduct was, in fact, similar to its response to reports of misconduct by a male coach.

To obfuscate this conspicuous deficiency, Stone loads her Complaint with irrelevant allegations about the conduct of male student-athletes. *See, e.g.*, *Id.* at ¶ 95 ("the Men's Swimming and Diving Team engage in jumping from their diving board 'naked'"); ¶ 96 ("male athletes engage in 'Primal Scream'"); ¶ 105 ("men's soccer team . . . maintained and shared a lewd document ranking members of the University's female soccer team"); ¶ 107 ("men's cross-country team engaged in similar and ongoing practices"). The allegations concerning the poor behavior of male student-athletes are legally irrelevant to her claim of gender discrimination. *See Brinig v. Ill. Cent. Sch. Bus, LLC*, No. 17-12482-RGS, 2019 U.S. Dist. LEXIS 31273 at *8 (D.

Mass. 2019) (comparators used to show disparate treatment must have "engaged in the same conduct without such differentiating circumstances" that distinguished their conduct or their employer's treatment of them); *Downey v. Johnson*, No. 1884CV01875-C, 2021 Mass. Super. LEXIS 468, at *55-60 (Mass. Super. Ct., Suffolk Cnty., Oct. 1, 2021) (comparators used to show disparate treatment must be "similarly situated in all respects."). Stone's Complaint further concedes that, unlike Stone, the coaches of the male teams she calls out were *not* the subject of reports of personal misconduct. *See* Compl., ¶¶ 106, 109 (alleging that head coaches of men's teams were never accused of misconduct"). These allegations do nothing to suggest, let alone plausibly plead, that Harvard's treatment of Stone was based on her gender rather than the allegations against her.

Accordingly, the Complaint does not make factual allegations that plausibly show Stone was treated less favorably than any similarly situated male comparator, nor that her separation from Harvard was based on gender, and therefore, fails to state a claim for gender discrimination. *Crawford*, 2024 U.S. Dist. LEXIS 107842, at *17-18 (dismissing complaint because comparators as pled were insufficient to state a claim).

## CONCLUSION

For the foregoing reasons, Harvard respectfully requests that the Court dismiss Counts I, II, and V in their entirety and partially dismiss Counts III and IV to the extent they are time-barred.

Respectfully submitted,


PRESIDENT AND FELLOWS OF HARVARD
COLLEGE

By its attorneys,


/s/ *Madeleine K. Rodriguez*
Madeleine K. Rodriguez (BBO # 684394)
Allison L. Anderson (BBO #687662)
Leah S. Rizkallah (BBO # 696949)
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210-2600
mrodriguez@foleyhoag.com
alanderson@foleyhoag.com
lrizkallah@foleyhoag.com
Tel: 617-832-1000
Fax: 617-832-7000

Dates: October 7, 2024

21

## **CERTIFICATE OF SERIVCE**

I hereby certify that on October 7, 2024, the foregoing document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent via first class mail to those indicated as non-registered participants.


/s/ *Madeline K. Rodriguez*
Madeline K. Rodriguez