IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KATHLEEN STONE<br><br>                Plaintiffs,<br>        v.<br><br>PRESIDENT AND FELLOWS OF HARVARD COLLEGE, and JOHN AND JANE DOES 1-50,<br><br>                Defendants. | Civil Action No. 24-cv-11897-JCB<br><br>LEAVE TO FILE GRANTED ON 12/12/2024 [D.E. 31] |

**PRESIDENT AND FELLOWS OF HARVARD COLLEGE'S
REPLY IN SUPPORT OF ITS MOTION TO DISMISS**

In opposing President and Fellows of Harvard College's ("Harvard") motion to dismiss, Kathleen Stone ("Stone") purports to defend her Complaint but really seeks to rewrite it.

Stone's efforts do nothing to cure the deficiencies raised in Harvard's opening brief. First, Stone attaches an affidavit with purported new allegations, which is procedurally improper and regardless does not remedy the defects of her Complaint. Second, Stone's contention that the continuing violations doctrine applies to her discrimination and retaliation claims misstates the law. At most, Stone's only actionable allegation is her separation in 2023, and there is no plausible basis to infer that it was the result of discrimination or retaliation. Third, as an alternative argument, Stone now contends she raised a hostile work environment claim that permits the Court to look back to various time-barred events. But Stone neither pled such a claim, nor did she plead facts leading to such a conclusion. Fourth, Stone's Equal Pay Act ("EPA") claims may only be predicated on alleged misconduct postdating the respective statutes of limitations, and her affidavit does not change that.

**I.    Stone's Affidavit Is Improper and Does Not Remedy Defects in Her Claims.**

Stone's proposed affidavit cannot be considered. A motion to dismiss is limited to the

1

"four corners of the complaint." *Young v. Lepone*, 305 F.3d 1, 11 (1st Cir. 2002). There are "narrow exceptions to this rule," *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993), including documents like the newspaper articles on which Stone's Complaint relied,[1] but an affidavit by a plaintiff asserting additional facts beyond the scope of her complaint in response to a motion to dismiss does not fall within these "narrow exceptions." *See Abe & Nahed, Inc. v. Global Cos. LLC*, No. 18-12425-FDS, 2019 U.S. Dist. LEXIS 89428, at *7 (D. Mass. May 28, 2019) (striking plaintiff's affidavit submitted in opposition to motion to dismiss). Accordingly, Stone's affidavit cannot properly be considered in connection with this motion to dismiss.

Even if the court could consider the affidavit—and it cannot—the "new" allegations do not cure the defects in Stone's pleading. The new facts Stone raises in her affidavit relate to general conversations she allegedly had with Erin McDermott and others in 2020-2022 regarding pay parity among athletic staff. *See* ECF 24-1 ("Stone Aff.") ¶¶ 6-13. These allegations do not provide further factual support for her discrimination or retaliation claims (Counts I, II, and V), nor do these alleged conversations about gender pay disparities broadly or inequality "between men's and women's sports" support her assertion that she, personally, was paid less than her male counterpart during the relevant limitations periods (Counts III and IV). The deficiencies in these claims remain.

## II. Stone Has Alleged a Single Adverse Employment Action—Her 2023 Separation—and There is No Plausible Basis to Infer It Was Motivated By Discrimination Or Retaliation.

Stone's discrimination and retaliation claims (Counts I, II, and V) require that she

---

[1] These "narrow exceptions" include "documents the authenticity of which are not disputed by the parties," "official public records," "documents central to [the plaintiff's] claims," and "documents sufficiently referred to in the complaint." *Watterson*, 987 F.2d at 3; *see also* ECF 14 ("Def. Mem.") at 4 n.2 (citing cases). Stone does not object to the Court's judicial notice of *The Boston Globe* article; rather, she objects only to the statements being accepted for the truth of their contents. ECF 24 ("Pl. Opp.") at 5 n.5. Harvard has not submitted this article—or the article from *The Athletic*, for that matter, which Stone does not address—for the truth of their contents but rather to inform the Court of the existence of these articles and their contents, as is relevant to their effect on Harvard thereafter.

demonstrate that she was subjected to "an adverse employment action," either resulting from her membership in a protected class or her engagement in protected conduct. *See Bhatti v. Trs. of Bos. Univ.*, 659 F.3d 64, 70 (1st Cir. 2011) (four-part test for prima facie discrimination case); *Frith v. Whole Foods Mkt., Inc.*, 38 F.4th 263, 275 (1st Cir. 2022) (three-part test for prima facie retaliation). Reading her Complaint and proposed affidavit, the only relevant adverse employment action she asserts is her "forced retirement" in 2023. *See* Pl. Opp. at 17-21; ECF 1 ("Compl.") ¶¶ 133-51, 165-73. Yet Stone's allegations fail to support any plausible causal connection between her separation and her protected status or any protected conduct.

    A.  <u>The Continuing Violation Doctrine Does Not Apply to Stone's Claims.</u>

Stone does not dispute that her discrimination and retaliation claims are subject to a 300-day statute of limitations. Pl. Opp. at 9. She nevertheless asserts that certain allegations beyond this limitations period—namely her placement on a Performance Improvement Plan ("PIP") in 2022—may be considered under the continuing violation doctrine. *Id.* at 12. Stone misunderstands the purpose and application of this doctrine.

The continuing violation doctrine is not a mechanism by which a plaintiff may "amalgamate a series of discrete acts of retaliation into one sweeping retaliatory harassment claim." *Rae v. Woburn Pub. Schs.*, 113 F.4th 86, 105 (1st Cir. 2024) (affirming dismissal of discrimination and retaliation claims and rejecting application of continuing violation doctrine). The First Circuit recently underscored that the continuing violation doctrine imposes a high bar even at the pleading stage, requiring courts to "disaggregate[e] each discrete act of alleged retaliation before assessing whether the continuing violations doctrine is applicable." *Id.* at 103. Even "serial violations" that are related do not render time-barred conduct actionable. *Id.* at 104. (quoting *Thornton v. United Parcel Serv., Inc.*, 587 F.3d 27, 33 (1st Cir. 2009)). Rather, the purpose of the doctrine is to "ensur[e] that meritorious discrimination claims are not pretermitted

3

because the claimant needed to experience a pattern of repeated acts before [they] could be expected to realize that the individual acts were discriminatory in nature." *Id.* at 103 (quoting *Loubriel v. Fondo del Seguro del Estado*, 694 F.3d 139, 144 (1st Cir. 2012)); *see also Jahour v. Mass. Bay Transp. Auth.*, No. 23-CV-10993-AK, 2024 U.S. Dist. LEXIS 23086, at *16 (D. Mass. Feb. 9, 2024) (explaining the doctrine exists to address "a type of 'repeated conduct' where a single act [] may not be actionable on its own" (citation omitted)).

Stone implores the Court to consider the following discrete acts as one claim: her alleged underpayment throughout her tenure; Harvard's alleged failure to adequately defend her or allow her to defend herself against allegations in the press; her 2022 PIP; the investigation Harvard opened into new allegations publicized in the press in 2023; and her resulting separation. Pl. Opp. at 12. This is not a pattern of retaliatory conduct, let alone one of which she lacked sufficient notice for these claims to accrue. *See Rae*, 113 F.4th at 104; *see also Ocean Spray Cranberries, Inc. v. Mass. Comm'n Against Discrim.*, 441 Mass. 632, 646 (Mass. 2004) (explaining a plaintiff cannot invoke the continuing violations doctrine where "the employer's actions (or inactions) were sufficient either to make the [plaintiff] aware of the discrimination, or to enable [them] to form a reasonable belief thereof"). Stone's notice of the conduct she now cites as discriminatory can hardly be questioned; Stone was certainly aware of being placed on a PIP, as she alleges multiple meetings with leadership on the topic, Compl. ¶¶ 65-67, and Stone herself argues she advocated against pay inequity for decades, Compl. ¶¶ 33-34; Stone Aff. ¶ 3-5. Stone cannot sidestep the statute of limitations under the guise of a continuing violation here.

Thus, Stone's Opposition—and her affidavit attached thereto—reaffirm that the sole adverse activity upon which her timely claims are based is her separation at the end of 2023.

4

> B. <u>Even with Stone's supplemental facts, there is no plausible basis to infer that Stone's 2023 retirement was related to her membership in a protected class or her prior advocacy for pay equity.</u>

Stone's attempt to recast her separation as based on discrimination or retaliation is implausible. A court "cannot infer [] discrimination based on factual allegations that are 'just as much in line with' the non-discriminatory explanation" identified. *Frith*, 38 F.4th at 275 (quoting *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 9 (1st Cir. 2011)); *see Air Sunshine, Inc. v. Carl*, 663 F.3d 27, 37 (1st Cir. 2011). Here, the non-discriminatory explanation for Stone's separation is far more plausible than the theories she espouses, and her affidavit only makes this clearer.

The sequence of events immediately preceding Stone's termination has not changed. In early 2023, *The Boston Globe* and *The Athletic* each published articles reporting abusive conduct by Stone toward students. Compl. ¶ 80; *see* ECF 14-2. The articles contain detailed allegations of abusive conduct as apparently recounted by dozens of former players. *See* ECF 14-1; ECF 14-2. Shortly after the serious allegations publicly surfaced in early 2023, and after meeting with Stone about the allegations, Harvard informed Stone that it would not be bringing her back for the next school year. Compl. ¶ 124. The notion that Stone's separation was motivated by discrimination or retaliation instead of this set of undisputed facts strains credulity.

Harvard's initial memorandum makes clear that Stone is unable to identify any comparators who were treated differently. Def. Mem. at 19-20 (detailing Stone's inclusion of one comparator whom she acknowledges was also separated under similar circumstances). Nonetheless, even in her attempt at a second bite at the apple, Stone still does not offer additional comparators through her affidavit or clarify any alleged differential treatment. *See* Stone Aff. Instead, Stone's Opposition spends pages recounting the "light" and "flexible" burden applied at the motion to dismiss phase. Pl. Opp. at 16-17. But courts do not simply take plaintiffs at their

5

word; to the contrary, courts hold plaintiffs to a plausibility standard, which is "not satisfied when allegations of misconduct are equally consistent with some innocent explanation." *Frith*, 38 F.4th at 275 (quoting *Foisie v. Worcester Polytechnic Ins.*, 967 F.3d 27, 52 (1st Cir. 2020)). Stone has not met that standard.[2]

Moreover, Stone's allegations do not support a plausible inference of a retaliatory motive for her separation, even with the "new" allegations in her affidavit. As detailed in Harvard's initial memorandum, Stone's purported "advocacy for pay parity" lacks any plausible causal connection to her separation. Def. Mem. at 22-23. Stone's attempt to bolster this connection in her affidavit has the opposite effect. In her affidavit, Stone alleges that she has been "advocating for gender pay parity" since 1999 but acknowledges that she has held her position for twenty-five years while undertaking this advocacy. Stone Aff. ¶¶ 2, 4. She also says her advocacy apparently increased in 2017, *id.* ¶ 5, and that she had "ongoing discussions" with McDermott in 2020-2022, *id.* ¶¶ 6, 8, but even if these discussions also comprised similar "advocacy"—which she does not actually state—she acknowledges that she still did not face any repercussions at that time. To the contrary, Stone received a six-figure raise thereafter. Compl. ¶ 42. These allegations do not "nudge" Stone's "from conceivable to plausible," but rather cast further doubt on Stone's retaliation theory, particularly given the intervening events that constitute the "obvious alternative explanation" for her separation. *Ocasio-Hernandez*, 640 F.3d at 9 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 533, 567, 570 (2007)).

---

[2] Stone's continued insistence that a comment by Athletic Director McDermott acknowledging that "this wouldn't be happening to a men's coach," Compl. ¶ 84, is an acknowledgment of disparate treatment <u>by Harvard</u> does not pass the straight-face test. The only plausible inference that can be drawn from this comment—made while discussing the article from *The Boston Globe*—is that McDermott was criticizing the press, not Harvard. *See* Def. Mem. at 21. Indeed, Stone addresses this discussion further in her affidavit and, even then, says only that McDermott talked about Stone's "situation." Stone Aff. ¶ 9. Stone's inability to actually draw this connection to purported wrongdoing by Harvard demonstrates that she cannot do so. McDermott's empathetic comments toward Stone were simply not a recognition that Harvard had treated Stone unfairly.

6

In sum, Stone's Complaint does not support a plausible inference that her separation was motivated by discrimination or retaliation, and her affidavit underscores that she cannot do so even if given another chance. This failure supports dismissal of Counts I, II, and V in full.

### III.     Stone Cannot Retroactively Assert a Hostile Work Environment Claim.

In an attempt to salvage her otherwise time-barred discrimination claims, Stone repeatedly insists in her Opposition that she pled a hostile work environment claim in her Complaint. Pl. Opp. at 2, 11-13. Not so.

Stone's Complaint does not reference—either directly or indirectly—a hostile work environment claim. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires "a short and plaint statement of the claim showing the pleader is entitled to relief in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555; *see, e.g.*, *McLaughlin v. Cambridge Sch. Comm.*, No. 24-10413-WGY, 2024 U.S. Dist. LEXIS 182626, at *14-15 (D. Mass. Oct. 7, 2024) (dismissing complaint that was a "meandering, somewhat chronological narrative" that did not state its allegations or claims with clarity); *Verlus v. Experian*, No. 23-cv-11426-DJC, 2024 U.S. Dist. LEXIS 122798, at *7 (D. Mass. July 11, 2024) (dismissing complaint where defendants "had no adequate notice of their purported wrongdoing" and thus no "meaningful opportunity to mount a defense" against the plaintiff's claims (citation omitted)). Without pleading a hostile work environment claim or the facts to go with it, the Court must dismiss this purported cause of action.[3]

To the extent that the Court entertains Stone's recasting of her Complaint and reads this

---

[3] The notion that Harvard is barred from addressing this claim in reply, Pl. Opp. at 11 n.5, is baseless. Stone cites no support for her theory. Indeed, her argument contravenes the very purpose of a reply brief, which is generally to respond to arguments that were not and could not have been anticipated in the initial memorandum. *See, e.g.*, *Smith v. Liberty Mut. Ins. Co.*, No. 1:20-cv-011583-ADB, 2021 U.S. Dist. LEXIS 78307, at *9 (D. Mass. Apr. 22, 2021) (explaining a party may "use a reply brief to clarify arguments previously made or to respond to an argument an opposing party raises in opposition" (quoting *Allied Home Mortg. Corp. v. Mark*, No. 12-cv-10158, 2014 U.S. Dist. LEXIS 139436, at *12 (D. Mass. Sept. 30, 2014))).

newly-asserted claim into one of the other causes of action, the claim still should be dismissed. To state a hostile work environment claim, "the plaintiff must allege sufficient facts to show that his workplace was permeated with discriminatory intimidation, ridicule, and insult that [was] sufficiently severe or pervasive to alter the conditions of . . . his employment and create an abusive working environment," *Finnegan v. Bernhardt*, No. 18-11965-NMG, 2019 U.S. Dist. LEXIS 241254, at *11-12 (D. Mass. May 21, 2019) (dismissing claim where allegations did not "rise to the level of severity or pervasiveness" required), and "objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so," *McIntosh v. Mass. Bay Transp. Auth.*, No. 24-cv-10109-RGS, 2024 U.S. Dist. LEXIS 93724, at *10 (D. Mass. May 27, 2024) (dismissing claim).  "There is no mathematically precise test . . . instead, [the Court] evaluate[s] the allegations and all circumstances, considering the frequency of the discriminatory conduct; its severity; whether it was physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfered with an employee's work performance."  *Smith v. Public Schs. of Northborough-Southborough Mass.*, 133 F. Supp. 3d 289, 296 (D. Mass. 2015) (alterations in original) (quoting *Carmona-Rivera v. Puerto Rico*, 464 F.3d 14, 19 (1st Cir. 2006)) (dismissing complaint where allegations pled were insufficiently pervasive or severe to give rise to a hostile work environment claim).  Stone makes no such allegations in her Complaint.

      The conduct Stone cites—being underpaid, subject to investigations in response to student and faculty complaints, and inadequately championed by Harvard against bad press, Pl. Opp. at 11-12—does not constitute harassment, let alone an environment "permeated with discriminatory intimidation."  First, Stone cites no precedent for her assertion that pay inequity can constitute "severe and pervasive" conduct to support a hostile work environment claim.  As

8

for the remaining allegations—Harvard's "refusal" to defend Stone in the face of public accusations, its decision to open an investigation into those allegations, and its determination that a PIP was appropriate in light of one such investigation—these decisions may have been objectionable to Stone, but they are not the sort of objectively offensive conduct a hostile work environment claim is intended to address. *See, e.g.*, *Callbeck v. Fallon Cmty. Health Plan, Inc.*, 480 F. Supp. 3d 308, 314 (D. Mass. 2020) (dismissing claim). Thus, Stone's attempt to retroactively allege a hostile work environment cannot salvage her discrimination claims.

## IV. Stone's Equal Pay Act Claims Cannot Be Predicated On Time-Barred Conduct.

Stone's allegations in her proposed affidavit also do not alter or overcome the statutes of limitations applicable to her two pay equity claims (Counts III and IV). Stone argues that her EPA claims are subject to the continuing violation doctrine, meaning that alleged pay discrepancies "dating back to, at a minimum, 2017," may all be considered within her claims. Pl. Opp. at 16. This is not an accurate statement of law.

First, the Lilly Ledbetter Fair Pay Act ("Ledbetter Act") does not affect the statutes of limitations governing Stone's EPA claims. The Ledbetter Act amended four statutes: "Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act of 1967, title I and section 503 of the Americans with Disability Act of 1990, and sections 501 and 504 of the Rehabilitation Act of 1973." Pub. L. 111-2, S. 181, Sec. 6. The EPA, which resides in the Fair Labor Standards Act, does not fall within this list. Excluding the EPA is not an oversight: the Ledbetter Act was "designed to be a narrow reversal of the *Ledbetter* [*v. Goodyear Tire & Rubber Co.*] decision, without upsetting any other current law," *Almond v. Unified Sch. Dist. No. 501*, 665 F.3d 1174, 1183 (10th Cir. 2011) (quoting H.R. Rep. No. 110-237, at 17 (2007)). The claim at issue in *Ledbetter* was under Title VII, as Ledbetter had previously "abandoned her

9

claim under the Equal Pay Act." 550 U.S. 618, 621 (2007). It would thus be inappropriate to apply the Ledbetter Act to the EPA under this statutory scheme.[4]

Second, Stone's argument is inconsistent with continuing violation law even if it does apply. As noted above, the purpose of the continuing violation doctrine is to "ensure[] that [] plaintiffs' claims are not foreclosed merely because the plaintiffs needed to see a pattern of repeated acts before they realized that the individual acts were discriminatory." *See Tourangeau v. Nappi Distribs.*, 648 F. Supp. 3d 133, 206 n.254 (citing *Thomas v. Eastman Kodak Co.,* 183 F.3d 38 (1st Cir. 1999)). Here, Stone pleads that she believed her pay was inequitable in 2017 and 2018 and adds in her affidavit that she continued to believe this in subsequent years. Compl. ¶¶ 33-37, Stone Aff. ¶¶ 5-8. By her own admission, Stone was aware of her purported pay equity claim years ago, yet she elected to wait until July 2024 to bring litigation. The continuing violation doctrine cannot cure or excuse her knowing delay. Accordingly, Stone's pay equity claims must be limited to the allegations arising in the limitations period.

## CONCLUSION

For the reasons set forth above, Harvard respectfully requests that this Court dismiss Counts I, II, and V in full and Counts III and IV to the extent they are time-barred.

---

[4] Neither the First Circuit nor courts within the District of Massachusetts have addressed whether the Ledbetter Act applies to EPA claims. While the District of Maine case on which Stone relies held that it does, *Tourangeau v. Nappi Distribs.*, 648 F. Supp. 3d 133 (D. Me. 2022), other courts disagree, *see, e.g.*, *Weidenbach v. Casper-Natrona Cty Health Dept.*, 563 F. Supp. 3d 1170, 1178 (D. Wy. 2021) ("Congress certainly could have amended the EPA or its statute of limitations as part of the Ledbetter Act, and this Court is charged with enforcing Congress' decision not to change how those statutes functioned."); *Earl v. Norfolk State Univ.*, No. 2:13cv148, 2014 U.S. Dist. LEXIS 88652, at *49 n.10 (E.D. Va. June 26, 2014) (noting the Ledbetter Act did not amend the EPA, "which does not present the same timeliness issue" as the statutes it amended); *Clark v. U.S. Postal Serv.*, No. 3:11-cv-899-J-32JBT, 2011 U.S. Dist. LEXIS 153625, at *7 (M.D. Fla. Dec. 13, 2011) ("[A]lthough that Act modified the statute of limitations for other federal statutes, it had no effect on the FLSA or its statute of limitations."). *But see Kellogg v. Ball State Univ.*, 984 F.3d 525, 529 (7th Cir. 2021). Moreover, as courts in this district have recognized, most circuits that have considered the Ledbetter Act's application have construed it narrowly and declined to apply the statute outside of "the specific claim in *Ledbetter*." *Harrington v. Lesley Univ.*, 554 F. Supp. 3d 211, 223 (D. Mass. 2021) (citing cases from the Second, Third, Tenth, and D.C. Circuits). This Court should therefore reject Stone's request to apply the Ledbetter Act to her EPA claim.

Respectfully submitted,

**PRESIDENT AND FELLOWS OF HARVARD COLLEGE**

By its attorneys,

*/s/ Emily J. Nash*

Madeleine K. Rodriguez (BBO #684394)
Allison L. Anderson (BBO #687662)
Leah S. Rizkallah (BBO #696949)
Emily J. Nash (BBO #696460)
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210-2600
mrodriguez@foleyhoag.com
alanderson@foleyhoag.com
lrizkallah@foleyhoag.com
enash@foleyhoag.com
Tel: 617-832-1000
Fax: 617-832-7000

## **CERTIFICATE OF SERIVCE**

I hereby certify that on December 11, 2024, the foregoing document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent via first class mail to those indicated as non-registered participants.

/s/ *Emily J. Nash*
Emily J. Nash