UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

|  |  |  |
|---|---|---|
| KATHLEEN STONE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 24-11897-LTS |
| | ) | |
| PRESIDENT AND FELLOWS OF | ) | |
| HARVARD COLLEGE, and | ) | |
| JOHN DOES 1-50, | ) | |
| | ) | |
| Defendants. | ) | |

---

REPORT AND RECOMMENDATION ON MOTION TO DISMISS
[Docket No. 13]

March 19, 2025

Boal, M.J.

Plaintiff Kathleen Stone ("Coach Stone") was formerly employed by defendant President and Fellows of Harvard College ("Harvard" or "the University") as the head coach of Harvard's Division 1 women's ice hockey team. In this action, she alleges sex discrimination and retaliation, claiming Harvard forced her to resign after false reports of misconduct were made against her by former players. Coach Stone also alleges that Harvard routinely underpaid her, and other female coaches, relative to their male counterparts. Harvard has moved to dismiss Counts I (Title VII sex/gender discrimination), II (M.G.L. c. 151B sex/gender discrimination), and V (retaliation) in their entirety and Counts III (violation of Federal Equal Pay Act) and IV (violation of the Massachusetts Equal Pay Act) to the extent that they are time barred. Docket

No. 13.[1]  For the following reasons, this Court recommends that Judge Sorokin grant in part and

deny in part the motion.

I.      FACTS[2, 3]

     A.      Allegations Regarding Pay Inequity

Coach Stone commenced her employment as Harvard's head coach of the women's ice

hockey team during the 1994-1995 season.  Complaint at ¶ 26.  Over her career, she led the team

to over 500 victories and multiple titles.  Id. at ¶ 28.  She briefly stepped away from her position

at Harvard to coach the U.S. Olympic Women's Hockey Team, where the team won a silver

medal in the 2014 Olympic games.  Id. at ¶ 29.

Throughout her tenure at Harvard, Coach Stone was underpaid vis-à-vis her male

counterpart.  Id. at ¶ 41.  In or around the beginning of 2017, in anticipation of a change in the

law, Coach Stone, together with other female coaches at the University, began to advocate for

pay transparency and parity between male and female coaches at Harvard.  Id. at ¶ 33.  She had

numerous conversations with various members of Harvard Athletic Departments and the

---

[1] On October 9, 2024, Judge Sorokin referred this case to the undersigned for full pretrial
management, including report and recommendation on dispositive motions.  Docket No. 21.

[2] Because this matter is before the Court on a motion to dismiss for failure to state a claim, the
Court "recite[s] the facts as alleged in the plaintiff['s] complaint, accepting all well-pleaded facts
as true and drawing all reasonable inferences in favor of the non-moving party."  Abdisamad v.
City of Lewiston, 960 F.3d 56, 57 (1st Cir. 2020) (quoting Squeri v. Mount Ida Coll., 954 F.3d
56, 61 (1st Cir. 2020)).

[3] On a motion to dismiss, the court may properly take into account four types of documents
outside of the complaint without converting the motion into one for summary judgment: (1)
documents of undisputed authenticity; (2) documents that are official public records;
(3) documents that are central to the plaintiff's claim; and (4) documents that are sufficiently
referred to in the complaint.  See Freeman v. Town of Hudson, 714 F.3d 29, 36 (1st Cir. 2013)
(citation omitted).  Harvard and Coach Stone both rely on documents not attached to the
complaint.  See Docket Nos. 14-1, 14-2, 24-1.  This Court finds that none of these documents fall
within the enumerated exceptions and has therefore not considered them.

administration regarding Harvard's anticipated efforts to bring compensation levels of male and female coaches into compliance with the new law.  Id. at ¶ 34.

In or around June of 2018, Harvard introduced a new model for coaches' compensation. Id. at ¶ 36.  According to Coach Stone, however, the new model did not reach pay equity, would not reach pay equity, and Harvard did not intend to do anything to reach pay equity.  Id. at ¶ 37. She continued to be underpaid at a rate between $50,000 and $100,000 less than the men's ice hockey team's head coach.  See id. at ¶¶ 38, 41.  It was not until July of 2022 that her salary was adjusted and increased by roughly $103,000 annually.  Id. at ¶ 42.  However, the head coach of the men's ice hockey team continued to receive a significantly higher compensation package than Coach Stone ever did.  Id. at ¶ 44.

B.    Allegations Regarding Investigations Against Coach Stone

On or about March 5, 2022, while addressing her team in the locker room, Coach Stone used the phrase "too many chiefs and not enough Indians."  Complaint at ¶ 47.  Coach Stone immediately paused, recognized her poor word choice, apologized to the players in attendance as well as players and staff that may not have been in attendance when the statement was uttered but who may have nevertheless been affected by her words.  Id. at ¶ 48.  She also self-reported the incident to her Sport Supervisor, Tim Troville.  Id. at ¶ 49.

Following the locker room incident, Coach Stone learned of a two-prong investigation by Harvard into the women's ice hockey program and, specifically, Coach Stone's behavior as head coach.  Id. at ¶ 45.  First, the then-assistant coach lodged a complaint regarding the locker room incident with Harvard's Human Resources Department.  Id. at ¶ 50.  Second, data collected

during Harvard's Mercer Study Survey[4] purportedly showed a low response rate and low satisfaction levels by the women's ice hockey team.  See id. at ¶¶ 51, 56.  The investigation concluded in early July 2022 with a finding that Coach Stone did not create a toxic work environment and had not engaged in a "pattern of unprofessional conduct."  Id. at ¶¶ 61, 62.

On July 13, 2022, Harvard placed Coach Stone in a performance improvement plan ("PIP") to address concerns raised by the players.  Id. at ¶ 64.  The main focus of the PIP was to improve coach-player communications, flexibility regarding players' academic schedules, and to address specific player feedback.  Id. at ¶ 66.  The PIP called for regular monthly meetings between Coach Stone and Troville.  Id. at ¶ 67.  However, Troville met with Coach Stone on only September 8, 2022 and then again on November 30, 2022.  Id. at ¶¶ 66, 67.

On or about October 24, 2022, Coach Stone learned of an upcoming article in the Boston Globe regarding her and allegations of misconduct against her.  Id. at ¶ 68.  She immediately notified Troville of the forthcoming article.  Id. at ¶ 74.  On or about January 18, 2023, Coach Stone met with Athletic Director Eric McDermott, Harvard's Press Secretary, and Harvard's General Counsel to discuss the anticipated article.  Id. at ¶ 77.  During the meeting, Coach Stone was strongly advised not to respond to or otherwise engage with the article's author, or to defend herself.  Id. at ¶ 78.  Rather, she was advised that the Press Secretary would submit a boilerplate response to the journalist's inquiries and requests for an interview or comment.  Id.  Coach Stone was repeatedly assured that the article was nothing to be concerned about and that Coach Stone's body of work and accomplishments would overshadow the article.  Id. at ¶ 79.

---

[4] The Mercer Study was a survey implemented by the University's Athletic Department in 2020, at the direction of then-Dean of Faculty of Arts and Sciences, Dr. Claudine Gay, with the full support and encouragement of Coach Stone, to try and gauge the role of athletics at Harvard.  Id. at ¶ 52.

The Boston Globe published the article concerning Coach Stone on January 27, 2023, depicting her as an angry and abusive coach.  Id. at ¶ 80.  Following the publication of the article, Coach Stone met with McDermott and Harvard's Press Secretary and offered to tell her side of the narrative and address the allegations in the article.  Id. at ¶¶ 82, 85.  McDermott and the Press Secretary "vehemently" advised that Coach Stone refrain from defending herself and allow the story to blow over with time.  Id. at ¶ 86.  During a meeting with McDermott, Coach Stone remarked that had she been a man, she would not have been treated in the same manner. Id. at ¶ 83.  McDermott agreed with Coach Stone and remarked "this wouldn't be happening to a men's coach."  Id. at ¶ 84.

Stone alleges that, after dissuading, if not outrightly prohibiting, Stone from defending herself against the article's allegations, Harvard turned its back on Coach Stone, initiated another investigation against her, and tacitly endorsed and condoned the spreading of false narratives and accusations harming her personal and professional reputation.  Id. at ¶ 87.  In or around March of 2023, Harvard retained outside counsel to investigate Coach Stone and reports regarding her performance as the women's ice hockey coach.  Id. at ¶ 88.  The investigation was instituted to review the allegations in the article as well as allegations that Coach Stone had permitted hazing and bullying by senior players in the women's ice hockey team.  See id. at ¶ 89.  Coach Stone maintains that she was not aware of any hazing or bullying by members of her team and that she immediately responded and reported any incidents of which she became aware.  See id. at ¶¶ 90-92.

Coach Stone alleges that Harvard treated her differently from male coaches experiencing similar allegations.  See id. at ¶¶ 93-119.  According to her, Harvard repeatedly shielded male coaches from repercussions for any alleged misconduct of their men's teams and respective male

players.  See id.  In addition, Harvard routinely tolerated behaviors akin to those Coach Stone

had been accused of so long as they emanated from male coaches who were permitted, if not

expected, to "be tough" and coach their players "hard," including using profanity and other

behaviors Harvard would define as abusive had they come from a female coach.  See id.

     C.    Coach Stone's Retirement

In or around May of 2023, Harvard advised Coach Stone that it did not intend to bring

her back for the 2023-2024 season, thereby terminating her employment effective at the end of

the 2022-2023 academic year.  Id. at ¶ 124.  Faced with, in essence, an ultimatum of retire or be

terminated, Coach Stone retired from Harvard, effective June 30, 2023.  Id. at ¶ 125.  After

forcing Coach Stone into retirement, Harvard announced its results from the investigation, which

found that the "women's ice hockey team ha[d] ***not*** fostered a culture of hazing."  Id. at ¶ 127

(emphasis in original).  Coach Stone alleges that Harvard's actions and treatment of her have

nearly made certain that she will not be able to coach again at the collegiate level.  Id. at ¶ 131.

She has not only suffered financially, but has also suffered immense trauma and turmoil.  Id. at ¶

132.

The complaint contains five counts against Harvard: (1) discrimination on the basis of

sex/gender in violation of Title VII of the Civil Rights Act of 1964; (2) discrimination on the

basis of sex/gender in violation of M.G.L. c. 151B; (3) violation of the federal Equal Pay Act of

1963 ("EPA"); (4) violation of the Massachusetts Act to Establish Pay Equity ("MEPA"); and

(5) retaliation in violation of Title VII, M.G.L. c. 151B, EPA, and MEPA.  Id. at ¶¶ 133-173.[5]

---

[5] The complaint also contains claims against John and Jane Doe Defendants who allegedly
conspired against and defamed Coach Stone.  See Complaint at ¶¶ 14, 174-207.

II.     ANALYSIS

    A.     Standard Of Review

A complaint must contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, the complaint "must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." Abdisamad, 960 F.3d at 59 (quoting Saldivar v. Racine, 818 F.3d 14, 18 (1st Cir. 2016)). "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." Id. (quoting Barchock v. CVS Health Corp., 886 F.3d 43, 48 (1st Cir. 2018)).

In assessing the sufficiency of the complaint, the "court approaches the complaint as follows: it 'isolate[s] and ignore[s] statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements,' then 'take[s] the complaint's well-plead (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see[s] if they plausibly narrate a claim for relief.'" Sonoiki v. Harvard Univ., 37 F.4th 691, 703 (1st Cir. 2022) (citing Zell v. Ricci, 957 F.3d 1, 7 (1st Cir. 2020)). "Plausible, of course, means something more than merely possible, and gauging a pleaded situation's plausibility is a context-specific job that compels us to draw on our judicial experience and common sense." Id.

When, as here, a motion to dismiss is based on an affirmative defense, such as the statute of limitations, in order to prevail, the facts establishing the defense must be "definitively ascertainable from the complaint and the other allowable sources of information," and those facts must be sufficient "to establish the affirmative defense with certitude." Rodi v. Southern New England School of Law, 389 F.3d 5, 12 (1st Cir. 2004) (citing In re Colonial Mortg. Bankers

7

Corp., 324 F.3d 12, 16 (1st Cir. 2013)).

      B.      <u>Statute Of Limitations</u>

      1.      Harvard Has Not Established That Stone's Sex/Gender
                 <u>Discrimination And Retaliation Claims Are Time Barred</u>

Under both Title VII and Chapter 151B, a plaintiff must file an administrative complaint with the Massachusetts Commission Against Discrimination ("MCAD") or the Equal Employment Opportunity Commission ("EEOC") within 300 days of the date of the occurrence of the alleged unlawful employment practice.[6]  <u>See</u> <u>Tuli v. Brigham & Women's Hosp.</u>, 656 F.3d 33, 40 (1st Cir. 2011) (citing 42 U.S.C. § 2000e-5(e)(1); M.G.L. c. 151B, § 5).  Coach Stone filed a charge with the MCAD on January 3, 2024.  Harvard argues, therefore, that any claims based upon actions occurring prior to March 9, 2023, are time barred.  Docket No. 14 at 15.[7]  Specifically, Harvard argues that any claims of discrimination or retaliation based on the HR investigation or Mercer Study, which were both completed in July 2022, are time barred.  <u>Id.</u>  It also argues that Stone's claims for pay discrimination under Chapter 151B for events that occurred prior to March 9, 2022, are time barred.  <u>Id.</u> at 16-17.  Coach Stone, on the other hand, argues that the "continuing violation" doctrine applies and makes her claims timely.  <u>See</u> Docket No. 24 at 10-13.

Pursuant to Title VII, "[u]nder the 'continuing violation' doctrine, a plaintiff may obtain

---

[6] Although the charge-filing period for Title VII claims is typically 180 days, it is extended to 300 days where the state anti-discrimination agency enforces a parallel state or local law, as the MCAD does.  <u>Goldstein v. Brigham and Women's Faulkner Hosp.</u>, 80 F.Supp.3d 317, 323 n.9 (D. Mass. 2015) (citing 42 U.S.C. § 200e-5(e)(1); <u>Nat'l R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101, 110 (2002)).

[7] Citations to "Docket No. ___" are to documents appearing on the Court's electronic docket. They reference the docket number assigned by CM/ECF, and include pincites to the page numbers appearing in the top right corner of each page within the header appended by CM/ECF.

recovery for discriminatory acts that otherwise would be time-barred so long as a related act fell within the limitations period." Tobin v. Liberty Mut. Ins. Co., 553 F.3d 121, 130 (1st Cir. 2009). "Although the name of the doctrine may sound auspicious for late-filing plaintiffs, it does *not* allow a plaintiff to avoid filing suit so long as some person continues to violate his rights." Perez-Sanchez v. Pub. Bldg. Auth., 531 F.3d 104, 107 (1st Cir. 2008) (emphasis in original). The doctrine "does not apply to 'discrete acts' of alleged discrimination that occur on a "particular day' . . . [i]nstead, it applies only to claims that cannot be said to occur on a particular day and that by their very nature require repeated conduct to establish an actionable claim, such as hostile work environment claims." Ayala v. Shinseki, 780 F.3d 52, 57 (1st Cir. 2015). "Discrete acts" include such acts as "termination, failure to promote, denial of transfer, or refusal to hire," and, accordingly, a plaintiff "can only file a charge to cover discrete acts that 'occurred' [i.e., the day that the discrete discriminatory or retaliatory act 'happened'] within the appropriate time period." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. at 114.

Similar to Title VII, Massachusetts law provides that "the 300 day requirement shall not be a bar to filing in those instances where facts are alleged which indicate that the unlawful conduct complained of is of a continuing nature." Shervin v. Partners Healthcare Sys., Inc., 2 F.Supp.3d 50, 69 (D. Mass. 2014) (citations omitted). "[A] person [may] seek damages for alleged discrimination occurring outside of the usual state of limitations period if the alleged events are part of an ongoing pattern of discrimination, and there is a discrete violation within the statute of limitations period to anchor the earlier claims." Id. (citations omitted). In order to show a continuing violation under Massachusetts law, a plaintiff must prove that:

> (1) at least one discriminatory act occurred within the six month limitations period; (2) the alleged timely discriminatory acts have a substantial relationship to the alleged untimely discriminatory acts . . . and (3) earlier violations outside the six-month limitations period did not trigger [the

> plaintiff's] 'awareness and duty' to assert [her rights], i.e., that [the plaintiff] could not have formed a reasonable belief at the time the employment actions occurred that they were discriminatory.

Id. at 69-70 (citing Ocean Spray Cranberries, Inc. v. Mass. Comm'n Against Discrimination, 441 Mass. 632, 642-643 (2004)).

"The classic example of a continuing violation is a hostile work environment, which "is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'" Tobin, 553 F.3d at 130 (citation omitted). "The continuing violation doctrine applies in that setting because hostile work environment claims by "[t]heir very nature involve[] repeated conduct' and 'a single act of harassment may not be actionable on its own.'" Id. (citations omitted). Therefore, "'component acts' of a hostile work environment claim that occur outside the filing period may be considered for purposes of determining liability." Id.

Harvard argues that Stone's claims cannot be saved by the continuing violation doctrine because she has not alleged a hostile work environment claim. Docket No. 14 at 16. Coach Stone, however, states that she has in fact alleged one. Docket No. 24 at 11. In doing so, she cites to paragraphs 137 and 147 of the complaint, alleging that "Harvard subjected Plaintiff to disparate treatment and an atmosphere of adverse employment actions and decisions because of her gender," and that such gender discrimination "severely affected the terms and conditions of her employment, and culminated in the discontinuation of her employment and forced early retirement." See id. These allegations, however, are the kind of conclusory allegations not sufficient to state a plausible claim. This Court does not read Coach Stone's complaint as plausibly stating a hostile work environment claim.

However, Stone's complaint alleges a series of discriminatory acts emanating from the same discriminatory animus including that Harvard instituted a policy and practice of

underpaying female coaches vis-à-vis their male counterparts, even admitting that Harvard would never bring female and male coaches into pay equity (Complaint at ¶¶ 33-44); refused to defend Coach Stone in face of meritless accusations of misconduct and hazing (id. at ¶¶ 62, 82-88, 122-123); refused to allow Coach Stone to defend herself against such allegations under the guise of allowing the moment to pass with Harvard's full support behind her (id. at ¶¶ 75, 77-79, 82-87); placed Coach Stone on a PIP without any support (see id. at ¶¶ 64, 66-67); investigated Coach Stone for behaviors permitted and tolerated of male coaches (id. at ¶¶ 88-119); and ultimately forced her to retire, under threat of termination, despite having previously tolerated actual misconduct by male coaches (id. at ¶¶ 124-130).  Except for the PIP and her forced retirement, the alleged conduct does not constitute "discrete acts."  Therefore, Harvard has failed to show, at this stage, that the continuing violation doctrine does not apply.

Coach Stone also alleges that, throughout the process, Harvard acted as if it were in full support of Coach Stone and her continued employment with the institution.  Specifically, according to Stone, Harvard advised her that it would defend and handle any media related to the unfounded allegations against her and would support her moving forward in her continued career with Harvard.  See Complaint at ¶¶ 77-79, 85-87.  Such acts cannot be said to have triggered Stone's awareness and duty to assert her rights, where it was not clear from Harvard's own actions that the situation was unlikely to improve until Harvard forced Stone to retire.  See Cuddyer v. Stop & Shop Supermarket Co., 434 Mass. 521, 535 (2001).  In light of the foregoing, this Court cannot conclude that Harvard has established its statute of limitations affirmative defense "with certitude."  See Rodi, 389 F.3d at 12.[8]

---

[8] In addition, this Court notes that "evidence of events that fall outside the statute of limitations may still be admitted as relevant background evidence to show that discriminatory animus

2.    EPA And MEPA Claims

The EPA imposes a two-year statute of limitations which may be extended to three years for a "willful violation."  29 U.S.C. § 255(a).  The MEPA imposes a three-year statute of limitations.  M.G.L. c. 105A, §105A(b).  Harvard argues, therefore, that Stone's EPA claims arising prior to July 2022, two years before she filed her complaint, and her claims under MEPA related to pay that occurred prior to July 2021, three years prior to the filing of the complaint, are time barred and should be dismissed.  Docket No. 14 at 17-18.

Harvard argues that Stone's EPA claims are subject to the two-year statute of limitations because she does not allege Harvard engaged in a willful violation of the EPA, nor does she allege facts sufficient to infer willfulness.  Docket No. 14 at 18.  A violation of the EPA is willful if the defendant "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute."  McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988).  Coach Stone alleges that Harvard failed to pay similarly situated coaches equally, and, despite introducing a new model for coaches' compensation in 2018, Harvard admitted that the new model did not reach pay equity, would not reach pay equity, and there was nothing further Harvard intended to do to reach pay equity.  Complaint at ¶¶ 35-38, 41.  At this stage, these allegations are sufficient to state a plausible claim of a willful violation of the EPA.  As such, this Court assumes that a three-year statute of limitations applies for purposes of Harvard's motion to dismiss.

Under the Lilly Ledbetter Fair Pay Act, "a new cause of action for pay discrimination arises every time a plaintiff receives a paycheck resulting for an earlier discriminatory

---

motivated the acts that occurred within the statute of limitations."  Malone v. Lockheed Martin Corp., 610 F.3d 16, 22 (1st Cir. 2010).

compensation practice – even one that occurred outside the statute of limitations period."
Tourangeau v. Nappi Distributors, 648 F.Supp.3d 133, 206 (D. Me. 2022) (internal modification,
quotation marks, and citations omitted).  Several courts have applied the Lilly Ledbetter Fair Pay
Act to EPA claims.  See, e.g., id.; Kellogg v. Ball State Univ., 984 F.3d 525, 531 (7th Cir. 2021).
This Court agrees with those decisions.  Here, Coach Stone alleges that she suffered ongoing
gender-based discrimination and ongoing pay discrepancies based upon her gender dating back
to 2017.  Under a fair reading of the Complaint, her EPA claim cannot be considered unattached
from the pay she has received from Harvard throughout her career and, therefore, Harvard has
not established that it is time barred.  See, e.g., Tourangeau, 648 F.Supp.3d at 206.  Accordingly,
this Court declines to recommend dismissal of Coach Stone's EPA grounds on statute of
limitations grounds at this stage.

Stone has not addressed the MEPA claims in her opposition.  At oral argument, her
counsel acknowledged that the Lilly Ledbetter Act would not save her MEPA claims related to
pay that occurred prior to July 2021.  Accordingly, I recommend dismissal of Stone's MEPA
claims related to pay that occurred prior to July 2021.

C.    Coach Stone Has Plausibly Stated A Claim For Gender Discrimination

Under the framework established by the Supreme Court in McDonnell Douglas, to
succeed in a claim for employment discrimination where, as here, there is no direct evidence of
discrimination, a plaintiff must first make out a prima facie case and, upon such a showing, the
burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the
adverse employment action.  See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-805
(1973).  In order to prove a prima facie case of discrimination, Stone must show that (1) she is a
member of a protected class; (2) she is qualified for the job; (3) she has suffered an adverse

employment action at the hands of Harvard; and (4) there is some evidence of a causal connection between her membership in a protected class and the adverse employment action. See Stratton v. Bentley Univ., 113 F.4th 25, 38 (1st Cir. 2024). However, "[t]he prima facie standard is an evidentiary standard, not a pleading standard, and there is no need to set forth a detailed evidentiary proffer in a complaint." Rodriguez-Reyes v. Molina-Rodriguez, 711 F.3d 49, 54 (1st Cir. 2013). However, the elements of a prima facie case "are part of the background against which a plausibility determination should be made." Id. (citations omitted).

Here, Coach Stone alleges that she was an objectively impressive coach, leading her team to over 500 victories and multiple titles, and was named the all-time "winningest" female coach in women's college hockey. Complaint at ¶¶ 2, 28, 30. She also alleges that, in the face of false allegations against her, Harvard treated her less favorably than similarly situated male coaches. Specifically, when male coaches were accused of misconduct, Harvard ignored the behavior altogether, or responded to such allegations after complaints reached a critical point where the misconduct could no longer be ignored. Id. at ¶¶ 93-118. Male coaches were also not held responsible for the conduct of their teams. Id. at ¶ 106. By comparison, Harvard immediately investigated Coach Stone for certain actions of her team of which she was unaware. Id. at ¶ 119. She also alleges that at least one of the administrators overseeing the investigation against Coach Stone admitted that had Coach Stone been male, the circumstances and the treatment she received would have been different. Id. at ¶¶ 83-84. Coach Stone was ultimately forced to resign, and after her forced resignation, Harvard announced that it had determined that the women's ice hockey team had not fostered a culture of hazing. Id. at ¶¶ 124-125, 127. These allegations are sufficient to state a plausible claim of gender and/or sex discrimination. Harvard's arguments to the contrary raise issues of fact not appropriate on a motion to dismiss.

14

     D.     <u>Stone Has Stated A Plausible Claim For Retaliation</u>

In order to prevail on a retaliation claim, the plaintiff must show (1) that she undertook

protected conduct; (2) that her employer took a material adverse action against her; and (3) a

causal nexus exists between elements one and two.  <u>Rodriguez-Vives v. Puerto Rico Firefighters</u>

<u>Corps of Puerto Rico</u>, 743 F.3d 278, 283 (1st Cir. 2014) (citations omitted).  Harvard argues that

Coach Stone has not sufficiently alleged any protected activity or a causal connection between

any protected activity and her departure from Harvard in 2023.  Docket No. 14 at 20-24.

Protected activity includes opposing any employment practice made unlawful by Title

VII.  <u>See</u> <u>Fantini v. Salem State College</u>, 557 F.3d 22, 32 (1st Cir. 2009) (citation omitted).  To

establish participation in a protected activity, the plaintiff "need not prove that the conditions

against which [s]he protested actually amounted to a violation of Title VII."  <u>Id.</u> (citations

omitted).  "In addition to protecting the filing of formal charges of discrimination, § 704(a)'s

opposition clause protects as well informal protests of discriminatory employment practices,

including making complaints to management . . ."  <u>Id.</u> (citation omitted).

Coach Stone has alleged that she repeatedly opposed gender-based pay disparities

between male and female coaches and complained of unequal treatment she received during the

investigations against her.  <u>See</u> Complaint at ¶¶ 33-44, 80-84.  She has therefore plausibly

alleged that she engaged in protected activity.

"[A]n inference of causation may be appropriate where there is close temporal proximity

between protected activity and an adverse action."  <u>Stratton</u>, 113 F.4th at 45.  Harvard argues that

Coach Stone's 2017 and 2018 discussions regarding pay disparity in coach compensation are too

attenuated to have a causal connection to her forced retirement in 2023.  Docket No. 14 at 22-23.

That argument, however, ignores Stone's January 2023 statements to Director McDermott that

she was being treated differently due to her gender.  Complaint at ¶¶ 83-84.  Harvard suggests that this comment was about the Boston Globe article, not Harvard's treatment of her, but such argument again raises issues of fact not appropriate at this stage.[9]

III.    RECOMMENDATION

For the foregoing reasons, this Court recommends that Judge Sorokin grant in part and deny in part Harvard's motion to dismiss.  Specifically, this Court recommends that Judge Sorokin dismiss Stone's MEPA claims related to pay that occurred prior to July 2021 but otherwise deny the motion.

IV.    REVIEW BY DISTRICT JUDGE

The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72(b), any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within 14 days of service of this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections.  See Fed. R. Civ. P. 72.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Fed. R. Civ. P. 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation.  See Phinney v. Wentworth Douglas Hospital, 199 F.3d 1 (1st Cir. 1999); Sunview Condo. Ass'n v. Flexel Int'l, Ltd., 116 F.3d 962 (1st Cir. 1997); Pagano v. Frank, 983

---

[9] Stone also relies on discussions she had with Harvard's administration in 2022 and 2023 but those allegations are not contained in the complaint. Rather, they are contained in her affidavit, which this Court may not consider.

16

F.2d 343 (1st Cir.1993).

/s/ Jennifer C. Boal
JENNIFER C. BOAL
United States Magistrate Judge