IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KATHLEEN STONE,<br><br>        Plaintiffs,<br>v.<br><br>PRESIDENT AND FELLOWS OF HARVARD COLLEGE, and JOHN AND JANE DOES 1-50,<br><br>        Defendants. | Civil Action No. 24-cv-11897-JCB |

**DEFENDANT PRESIDENT AND FELLOWS OF HARVARD COLLEGE'S
OBJECTIONS TO REPORT AND RECOMMENDATION**

Plaintiff Kathleen Stone ("Stone") has brought multiple causes of action against Defendant President and Fellows of Harvard College ("Harvard"), including pay and retaliation claims under the Equal Pay Act ("EPA") and Massachusetts Equal Pay Act ("MEPA"), and gender discrimination and retaliation claims under Title VII and Massachusetts G.L. c. 151B ("Chapter 151B"). Harvard moved for full dismissal of the discrimination and retaliation claims (Counts I, II, and V), and dismissal of the EPA and MEPA claims to the extent time barred (Counts III and IV). The Magistrate Judge's Report and Recommendation on Motion to Dismiss ("R&R"), ECF 41, denies Harvard's motion with the exception of dismissing the time-barred MEPA claims in Count IV. Pursuant to Federal Rule of Civil Procedure 72(b), Harvard submits the following objections to the R&R.

First, the R&R improperly concludes that Stone's EPA claim includes Stone's compensation throughout her decades-long tenure. This conclusion is inconsistent with the EPA's statute of limitations, which is unaltered by the Lilly Ledbetter Fair Pay Act. Second, the R&R misapplies the continuing violations doctrine to Stone's Title VII and Chapter 151B discrimination

1

and retaliation claims, similarly tolling these causes of action, to include Stone's allegations arising years before the 300-day statute of limitations. This conclusion is directly contradicted by First Circuit precedent in *Rae v. Woburn Public Schools*, which held that untimely discrete acts, like those alleged by Stone, cannot be actionable, *see* 113 F.4th 86, 105 (1st Cir. 2024). Third, the R&R concludes Stone plausibly stated a claim that her termination was discriminatory without considering whether there was an obvious alternative explanation for her departure, which is contrary to First Circuit precedent, *see Frith v. Whole Foods Market Inc.*, 38 F.4th 263, 274 (1st Cir. 2022). Fourth, the R&R permits Stone's retaliation claim to proceed even though her alleged protected conduct predates the alleged retaliation by several years and is not plausibly connected to her 2023 termination. These deficiencies are, as a matter of law, fatal to Stone's claims. For the reasons described more fully below, Harvard respectfully submits that the Court should modify the R&R to dismiss Counts I, II, and V and dismiss Count III to the extent time barred.

## I.   **Factual Background**[1]

The following facts are taken from the Complaint, which are accepted as true solely for the purposes of Harvard's Motion to Dismiss ("Motion"). Harvard provides the following summary of facts most relevant to its objections and otherwise incorporates by reference the factual background stated in its Motion. *See* ECF 14 at 2-8.

Harvard employed Stone as the head coach of its Women's Ice Hockey Team (the "Team") for nearly three decades. ECF 1 ¶ 2. Beginning in 2020, Harvard began receiving complaints and allegations regarding Stone's conduct and leadership as head coach and the Team culture she

---

[1] In its motion, Harvard submitted as exhibits two press articles—of which the accuracy was never disputed—that are publicly available, and central to and relied on by Stone's allegations in her Complaint. ECF 14-1, 14-2. The R&R concluded that the Court could not consider these documents for the purposes of deciding Harvard's motion. ECF 41 at 2 n.3. Harvard disputes this conclusion, *see, e.g.*, *United States ex rel. Winkelman v. CVS Caremark Corp.*, 827 F.3d 201, 208 (1st Cir. 2016), but for the purposes of this objections document, relies solely on the allegations asserted in the Complaint.

fostered.  *Id.* ¶¶ 45-47, 51-52, 56, 58, 64, 80, 88-89.   In July 2022, Harvard placed Stone on a Performance Improvement Plan ("PIP") to address complaints related to Stone's conduct toward student athletes.  *Id.* ¶¶ 63-64.  In January 2023, Harvard learned—beginning with an exposé published in the *Boston Globe*—of further complaints made by current and former students of widespread misconduct by Stone toward her student athletes.  *Id.* ¶ 80.  In May 2023, Harvard informed Stone that it would not bring her back to coach the 2023-2024 season.  *Id.* ¶ 124.  Stone agreed to retire from Havard, effective June 30, 2023.  *Id.* ¶ 125.

### A. Stone's Discrimination and Retaliation Claims.

Stone asserts that her resignation constitutes sex-based discrimination and/or retaliation, and she also expands her claims to allege that prior conduct by Harvard—including prior investigations into concerns raised about Stone's conduct—were discriminatory.  Specifically, beginning in March 2022, Harvard conducted two investigations arising from Stone's conduct.  *Id.* ¶¶ 47, 50-52, 56, 58.  Earlier that month, Stone made an offensive comment to her players in the locker room, telling them they were playing as if there were "too many chiefs and not enough Indians."  *Id.* ¶ 47.  Stone's assistant coach immediately complained to leadership that Stone created a "toxic work environment."  *Id.* ¶ 50.  Harvard investigated this complaint, which was completed in July 2022.  *Id.* ¶¶ 47, 62.  Separately, Harvard conducted a student-athlete review due to concerns raised by student-athletes—including concerns raised by students through a student-athlete survey conducted by Harvard Athletics.  *Id.* ¶¶ 51, 61, 63.  Among other issues, the university-wide survey reported that players on the Team experienced low levels of satisfaction, raising a red flag concerning Stone's leadership.  *Id.* ¶¶ 56, 58.  This student-athlete review was also completed in July 2022.  *Id.*¶ 61.  On July 13, 2022, Harvard informed Stone of some of the feedback players on the Team had conveyed and explained that it was necessary to place her on a Performance Improvement Plan ("PIP") for the upcoming 2022-2023 season "to address concerns

3

raised by the players." *Id.* ¶¶ 63-64. The PIP detailed several areas of Stone's performance that needed improvement, largely focused on her interactions with players. *Id.* ¶ 66.

In January 2023, Harvard learned of new allegations regarding the Team environment and Stone's conduct as head coach through an investigative report published by the *Boston Globe* on January 27, 2023 (the "*Globe* Article"). *Id.* ¶ 80. The *Globe* Article detailed complaints from current and former players that Stone's coaching and leadership were harmful. *Id.* ¶¶ 80, 89. The day after the *Globe* Article was published, Stone and the Director of Athletics, Erin McDermott, spoke "about the article." *Id.* ¶¶ 82, 85. "During this conversation, Stone remarked that she would not have been or continue to be treated the way she had been up to that point had she been a man." *Id.* ¶ 83. Allegedly, McDermott agreed in response that "this wouldn't be happening to a men's coach." *Id.* ¶ 84. Several weeks later, Harvard commenced a privileged investigation related to the allegations raised in the *Globe* article. *Id.* ¶¶ 88-89.

After Harvard informed Stone that it did not intend to bring her back for the 2023-2024 season, Stone agreed to retire, effective June 2023. *Id.* ¶¶ 124-25.

### B. Stone's Pay Equity Allegations.

Stone alleges that in 2017, in anticipation of the passage of a new pay equity law, she and other female coaches advocated for pay transparency and parity. *Id.* ¶ 33. She asserts that she was "underpaid as compared to her male counterpart for years" prior to that. *Id.* ¶ 35. In 2018, Harvard undertook a pay equity review, but Stone contends she was underpaid thereafter. *Id.* ¶¶ 33-38. Four years later, in July 2022, Harvard engaged in a new adjustment that increased Stone's salary by $103,000. *Id.* ¶ 42. She alleges the men's hockey coach continued to earn more than she did after that adjustment. *Id.* ¶¶ 42, 44.

4

### C. The Instant Litigation.

On January 3, 2024, Stone filed a charge with the Massachusetts Commission Against Discrimination ("MCAD") alleging gender discrimination and retaliation. The MCAD Charge contains substantially similar allegations to those set forth in the Complaint. *Id.* ¶ 24. Stone subsequently withdrew her charge from the MCAD and on July 23, 2024, brought this action. *Id.*

## II. Argument

### A. Standard of Review

The Court's review of the objected-to portions of the R&R is de novo. *See* 28 U.S.C. § 636(b)(1); *see, e.g.*, *Hughes v. Baystate Fin. Servs., LLC*, No. 23-CV-10361-AK, 2024 U.S. Dist. LEXIS 61917, at *11 (D. Mass. Mar. 31, 2024). In conducting its review, the Court is free to "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636 (b)(1). "Absent objection . . . [a] district court ha[s] a right to assume that [the affected party] agree[s] to the magistrate's recommendation." *Templeman v. Chris Craft Corp.*, 770 F.2d 245, 247 (1st Cir. 1985).

### B. Stone's Claims Must Be Dismissed to the Extent They Are Time Barred.

Stone's claims rely on allegations that are barred by the applicable statutes of limitations. *See* ECF 14 at 8-19. There is no dispute that Stone's EPA and MEPA claims are governed by a two- or three-year limitations period, and her Title VII and Chapter 151B claims are governed by a 300-day statute of limitations. The R&R declined to apply these statutes of limitations, however, instead accepting Stone's arguments that the operable statutes of limitations had been tolled—in the case of the EPA claim, by the Lilly Ledbetter Fair Pay Act ("Ledbetter Act"), and with respect to the remaining claims, by the continuing violations doctrine. Harvard respectfully objects to both conclusions as inconsistent with governing law.

        1.        <u>The Ledbetter Act Does Not Toll the Statute of Limitations Governing Stone's EPA Claim.</u>

EPA claims are cabined by a two- to three-year statute of limitations.[2] *See* 29 U.S.C. § 255(a). This is not in dispute. Yet Stone contends her EPA claim extends to alleged pay disparities spanning her entire multi-decade tenure at Harvard and seeks damages well beyond the limitations period. *See* ECF 1 ¶¶ 154, 160; *see also* ECF 24 at 16 (arguing in her opposition to Harvard's Motion that her claim "cannot be considered separate from the pay she received throughout her career with Harvard as the chronic and deliberate underpayment of female coaches"). The R&R's conclusion—adopting Stone's argument in full—has the effect of de facto eliminating the statute of limitations for this case and similar cases in the future. The R&R accepted this position on the grounds that the Ledbetter Act altered the EPA to permit such unbounded claims. But the Ledbetter Act neither applies to EPA claims nor tolls the statute of limitations for the claims to which it does apply. The R&R's conclusion is inconsistent with the text and purpose of the Ledbetter Act and would effectively nullify the statute of limitations in EPA claims.

The Ledbetter Act did not establish a basis to toll the statute of limitations in EPA claims. The Ledbetter Act did not amend the EPA at all; it amended four other statutes, explicitly identifying each. *See* ECF 32 at 9-10. But even for the statutes it amended, the Ledbetter Act did not expand, alter, or toll the respective statutes of limitations. Rather, the Ledbetter Act altered when such claims *accrue*.

The Ledbetter Act established that claims of pay discrimination under Title VII (and the other statutes listed in the law) arise not only at the time of a discriminatory pay decision, but also

---

[2] Harvard objects to the R&R's conclusion that Stone plausibly alleged a willful violation of the EPA, justifying the application of a three-year limitations period. ECF 41 at 12. Given Harvard's multiple pay adjustments to address concerns of pay parity—including one resulting in a six-figure raise to Stone—Stone has not plausibly alleged that Harvard showed "reckless disregard" for its legal obligations. *See McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988) (defining "willfulness" standard).

"each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice." 42 U.S.C. § 2000e-5(e)(3)(A).  The Ledbetter Act was passed to reverse the outcome of *Lilly Ledbetter v. Goodyear Tire & Rubber Company*, in which the Supreme Court held that Ms. Ledbetter's Title VII claim was time-barred because it accrued at the time of the discriminatory decision and not with the subsequent paycheck.  550 U.S. 618, 621 (2007).  Notably, in *Ledbetter*, the Court—both the majority and the dissent—acknowledged that Ms. Ledbetter's claim would have been timely if brought under the EPA, where a claim arises "each time an employee receives a paycheck that reflects past discrimination." *Id.* at 640; *see id.* at 658 n.8 (Ginsburg, J., dissenting).  The majority, however, declined to apply the EPA's accrual rule to Title VII.  *See id.* at 640-41.  The Ledbetter Act amended Title VII to reverse this outcome and align with the EPA, recognizing that an unlawful employment practice occurs not only at the time of the discriminatory decision, but also at the time of the resulting paycheck(s).  42 U.S.C. § 2000e-5(e)(3)(A).  Put differently, following the Ledbetter Act, a claim may be timely if based on a recent inequitable paycheck, even if that paycheck is the result of a decision that predates the limitations period.

The Ledbetter Act thus altered when a pay discrimination cause of action accrues—or when the limitations clock begins to run; it did not eliminate, alter, or toll the operable statutes of limitations thereafter.  *See Kellogg v. Ball State Univ.*, 984 F.3d 525, 529 (7th Cir. 2021) (referring to "the paycheck accrual rule, as codified by the Lilly Ledbetter Fair Pay Act of 2009").

The R&R, however, accepted Stone's argument that the Ledbetter Act tolls the statute of limitations on her untimely allegations simply because Stone has asserted "ongoing" pay discrepancies within the limitations period.  ECF 41 at 13 (concluding Stone's "EPA claim cannot be considered unattached from the pay she has received from Harvard throughout her career and,

7

therefore, Harvard has not established that it is time barred"). The R&R cites two cases in support of this conclusion. ECF 41 at 13. The first, *Kellogg*, does not support the R&R's application of the Ledbetter Act to eliminate, toll, or otherwise disregard the statute of limitations. In *Kellogg*, the Seventh Circuit did not recognize the EPA claim as a continuing violation, but rather cited the Ledbetter Act for what it is: a "paycheck accrual rule." 984 F.3d at 530. Applying the Ledbetter Act supported the court's conclusion that the claim accrued at the time of the allegedly inequitable payment. *Id.* The Seventh Circuit did not sanction what the R&R has done here: the use of one timely allegation of pay inequity to justify tolling the statutory period to include years of untimely allegations of pay inequity. *See id.* at 529 (finding the Ledbetter Act permits the plaintiff to "seek damages from any paychecks that she received *within the statute of limitations window*" (emphasis added)).

From this misapplication of *Kellogg,* the R&R then wholesale adopts a District of Maine case, *Tourangeau v. Nappi Distributors*, which stands alone in interpreting the Ledbetter Act as effectively nullifying the statute of limitations in EPA claims, so long as at least a portion of the claim is timely, 648 F. Supp. 3d 133, 206 (D. Me. 2022). In *Tourangeau*, the court held that under both the Ledbetter Act and the continuing violations doctrine, the statute of limitations did not restrict the plaintiff's claim, as her timely allegations of pay discrepancies "cannot be considered unattached from the pay she [] received" since her hire. *Id.* Both rationales are unsupported by law. First, as explained above, the Ledbetter Act did not permit consideration of untimely paychecks, but rather permitted consideration of timely paychecks, even if the result of an untimely pay decision. Second, it is well established that pay inequity claims are not continuing violations but rather separate and discrete acts occurring with each inequitable paycheck. *See AMTRAK v. Morgan*, 536 U.S. 101, 112-14 (2002) (clarifying that "serial violations," including repeated

8

unequal paychecks, are distinct from hostile work environment claims that are "based on the cumulative effect of individual acts" and can support recovery even for acts that occurred outside the limitations period); *see also, e.g.*, *Kellogg*, 984 F.3d at 530; *Campbell v. Mitre Corp.*, No. 98-cv-11768-RWZ, 2001 U.S. Dist. LEXIS 13258, at *8-14 (D. Mass. 2001) (limiting EPA damages to limitations period); *Metzinger v. United States*, 173 Fed. Cl. 636, 647-48 (2024) (rejecting application of continuing violations doctrine to EPA claim).

Accepting the R&R's conclusion would effectively nullify the statute of limitations in EPA claims—and without any clear statutory directive to do so. Based on the R&R's analysis, as long as a plaintiff has received even one paycheck within the limitations period, they are free to pursue claims, and seek damages, based on their entire tenure at the employer. But "discrete acts that fall within the statutory period do not make timely acts that fall outside the time period." *Morgan*, 536 U.S. at 113. The Massachusetts Supreme Judicial Court put it clearly when rejecting the application of the continuing violations doctrine in the MEPA context: applying the continuing violations doctrine to unequal wage claims "would eviscerate" the statute of limitations altogether. *Silvestris v. Tantasqua Reg'l Sch. Dist.*, 446 Mass. 756, 769 (2006). The Ledbetter Act does not compel this change.

Thus, whether this Court determines that the Ledbetter Act applies to an EPA claim or not, the outcome is the same: only the portion of Stone's claim derived from paychecks received during the limitations period is timely. Thus, Harvard respectfully requests that the Court modify the R&R to dismiss Stone's EPA claim relying on allegations of unequal payment predating July 23, 2022. Harvard agrees with the R&R's conclusion that the MEPA claim is so limited, ECF 41 at 13.

        2.       <u>The Continuing Violations Doctrine Does Not Apply to Stone's Remaining Claims.</u>

Stone's Title VII and Chapter 151B claims that occurred outside the 300-day limitations period—i.e., before March 9, 2023—are likewise untimely and unactionable. The R&R, however, accepted Stone's argument that the continuing violations doctrine applies and permits recovery beyond the limitations period. ECF 41 at 9-10. In reaching this conclusion, the R&R failed to mention, let alone undertake, the continuing violations analysis required by the First Circuit under *Rae v. Woburn Public Schools*, 113 F.4th 86, 105 (1st Cir. 2024).

In *Rae*, a 2024 decision reviewing a motion to dismiss, the plaintiff attempted to "amalgamate a series of discrete acts" into "one sweeping" claim to invoke the continuing violations doctrine. *Id.* at 102-03. The First Circuit explained that "the continuing violations analysis requires disaggregating each discrete act of alleged [misconduct] before assessing whether the continuing violations doctrine is applicable." *Id.* at 103. Undertaking this analysis, the court assessed each alleged act of retaliation and harassment cited by the plaintiff—which included denials of transfer and promotion, the initiation of disciplinary proceedings, and bullying, all allegedly related to her advocacy for students with disabilities—and concluded that each constituted a discrete act for which the limitations period had run. *Id.* at 105-07.

Applying the *Rae* analysis yields the same result here. The R&R recognized that Stone had alleged the following "series of discriminatory acts": (1) a general practice of "underpaying female coaches" writ large; (2) "refus[al] to defend Coach stone in face of meritless accusations of misconduct and hazing" or allow her to defend herself; (3) placing Stone on a PIP; (4) investigating Stone for conduct "permitted and tolerated of male coaches"; and (5) ultimately "forc[ing] her to retire." ECF 41 at 11. Disaggregating these alleged acts, none supports application of the continuing violations doctrine. First, as the R&R correctly recognized,

10

Harvard's decision to place Stone on a PIP in 2022 was a discrete act, as was Stone's 2023 termination. ECF 41 at 11. Discrete acts like these do not constitute a continuing violation. *See Rae*, 113 F.4th at 103-05; *Morgan*, 536 U.S. at 113. The remaining three "acts" do not amount to a continuing violation:

- Stone's allegations about Harvard's pay practices to "female coaches" do not establish a continuing violation. To the extent this is cited by Stone or the R&R to illustrate discriminatory animus, the First Circuit has rejected assertions of "generalized" discrimination as a basis for the continuing violations doctrine. *Rae*, 113 F.4th at 104. To the extent it is intended to refer to Harvard's pay practices toward Stone, this allegation cannot support applying the doctrine because it is well established that pay practices constitute discrete acts. *See supra* Section B.1.
- Stone's two remaining allegations—regarding Harvard's alleged refusal to defend Stone or permit her to defend herself, and its investigation into allegations made against her—appear to have accrued within the limitations period. *See* ECF 1 ¶¶ 75, 77-79, 82-87, 88-119.

Thus, there is no basis to apply the continuing violations doctrine to Stone's Title VII and Chapter 151B claims.

Harvard notes that the R&R correctly recognized that Stone did not plausibly allege a hostile work environment claim. ECF 41 at 10. The archetypal example of a continuing violation is a hostile work environment claim. *See Morgan*, 536 U.S. at 114. The R&R recognized that Stone did not plead a hostile work environment claim yet applied the continuing violations doctrine to Stone's individual allegations. ECF 41 at 10. Neither Stone nor the R&R cited any authority

11

recognizing the continuing violations doctrine outside of a hostile work environment context. *See* ECF 41 at 10.

### C.    Stone Has Failed to Plausibly Allege Discrimination.

Harvard further objects to the R&R's conclusion that Stone stated a plausible claim of discrimination under Title VII or Chapter 151B. Again, in reaching this conclusion, the R&R failed to recognize or apply controlling First Circuit precedent. Specifically, in *Frith v. Whole Foods Market Inc.*, the First Circuit reaffirmed that where alleged facts support an "obvious alternative explanation" for alleged discriminatory conduct, discrimination claims fail to cross "the plausibility threshold" required at the motion to dismiss stage. 38 F.4th 263, 274 (1st Cir. 2022) (quoting *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 8 (1st Cir. 2011)). In *Frith*, the plaintiffs claimed that Whole Foods started enforcing its previously unenforced dress code policy to prohibit employees from wearing Black Lives Matter masks in its stores. *Id.* The First Circuit found this "reasonable inference" was defeated by "common sense, [which] suggests that Whole Foods would have had non-race-based reasons in June 2020" for enforcing the policy, e.g., the emergence of the coronavirus pandemic, and the sudden prevalence of mask wearing as a new form of "mass expression" and coordinated "protest." *Id.*

Likewise, Stone's own Complaint supports an "obvious alternative explanation" for Harvard's actions toward Stone in 2023. *See* ECF 14 at 18-20. Her allegations—which recognize widely publicized complaints of serious misconduct by her as a coach—support the inference that Harvard's decision to terminate her employment was related to her conduct, and not because of her sex. *See id.* Conversely, Stone's own allegations undermine the discriminatory inference she asks the Court to draw. Stone purports to point to male coaches as comparators who received different treatment, but in doing so, she identifies only one similarly situated male comparator— the one other coach who faced complaints regarding *his* misconduct, as opposed to his team's—

12

and he was investigated and ultimately terminated. *See* ECF 14 at 18-20. Courts "cannot infer [] discrimination based on factual allegations that are 'just as much in line with' the non-discriminatory explanation." *Frith*, 38 F.4th at 275 (quoting *Ocasio-Hernández*, 640 F.3d at 9). Here, the obvious alternative explanation is even more plausible than the discriminatory inference Stone proposes. Consideration of this obvious alternative explanation therefore requires dismissal of Stone's discrimination claims.

### D. Stone Has Failed to Plausibly Allege Retaliation.

Finally, Harvard respectfully objects to the R&R's conclusion that Stone's allegations plausibly allege retaliation under Count V. The R&R recognized two alleged "protected activities" in support of Stone's retaliation claim: her opposition to "gender-based pay disparities between male and female coaches" and her "complain[t] of unequal treatment she received during the investigations against her." *See* ECF 41 at 15 (citing ECF 1 ¶¶ 33-44, 80-84). Neither activity suffices to plead a retaliation claim.

First, Stone's general advocacy against gender pay disparities is neither protected activity nor plausibly causally connected to Stone's 2023 termination. The First Circuit has rejected the notion that "protesting societal issues can, on its own support a Title VII retaliation claim." *Frith*, 38 F.4th at 277, n.15. Regardless, this advocacy from 2017-2018 is too attenuated to support an inference of causation for Stone's 2023 termination. *See* ECF 14 at 16-18. Stone's 2023 comment to McDermott does not cure this causation issue. Stone herself does not allege that her comment related to pay. Even a liberal reading of the Complaint does not support the R&R's inference that this comment in some way connects to Stone's advocacy from six years prior to Harvard's 2023 decision to terminate Stone's employment.

Second, contrary to the R&R's characterization, Stone's Complaint does not support an inference that she "complained of unequal treatment" by Harvard in connection with any

13

investigations, ECF 41 at 15.  The only "complaint" cited by the R&R for this point is Stone's 2023 comment to McDermott, *see id.* (citing ECF 1 ¶¶ 80-84), which, as Stone alleges, took place in a January 28, 2023 meeting "about the [Globe] article."  But this comment had nothing to do with any Harvard investigation.  Stone's pleadings make clear that the alleged January 2023 comment to McDermott did not even occur *during* any investigation related to Stone; by her own allegations, the investigation that followed the *Globe* Article began in March, two months later. *See* ECF 1 ¶¶ 80-84, 88.  There is no plausible basis to infer that Stone's comment referred to any conduct by Harvard at all, let alone an unlawful employment practice by Harvard.  *Cf. Frith*, 38 F.4th at 276 (explaining that protected conduct includes actions taken in opposition to unlawful employment practices).  This allegation cannot serve as the basis for Stone's retaliation claim.

### III.    Conclusion

For the foregoing reasons, Harvard respectfully submits that the court should modify the R&R's recommendation to find that the Complaint fails to state a claim with respect to Counts I, II, and V, and that both Counts III and IV are dismissed to the extent they are time barred.

Respectfully submitted,

**PRESIDENT AND FELLOWS OF HARVARD COLLEGE**

By its attorneys,

*/s/ Emily J. Nash*
Madeleine K. Rodriguez (BBO #684394)
Allison L. Anderson (BBO #687662)
Leah S. Rizkallah (BBO #696949)
Emily J. Nash (BBO #696460)
Maureen S. Berry (BBO #712841)
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210-2600

mrodriguez@foleyhoag.com
alanderson@foleyhoag.com
lrizkallah@foleyhoag.com
enash@foleyhoag.com
mberry@foleyhoag.com
Tel: 617-832-1000
Fax: 617-832-7000

Dated: April 2, 2025

## **CERTIFICATE OF SERIVCE**

      I hereby certify that on April 2, 2025, the foregoing document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent via first class mail to those indicated as non-registered participants.

                                                                       /s/ *Emily J. Nash*
                                                                         Emily J. Nash