**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| KATHLEEN STONE,<br><br>        Plaintiff,<br><br>   v.<br><br>PRESIDENT AND FELLOWS OF<br>HARVARD COLLEGE, and JOHN AND<br>JANE DOES 1-50,<br><br>      Defendants. | Civil Action No. 24-cv-11897-JCB |

**DEFENDANT PRESIDENT AND FELLOWS OF HARVARD COLLEGE'S**
**ANSWER TO COMPLAINT**

Defendant President and Fellows of Harvard College ("Defendant" or "Harvard"), through its counsel, hereby answers the numbered Paragraphs of the Complaint and Jury Demand ("the Complaint") filed by Plaintiff Kathleen Stone ("Plaintiff" or "Stone") on July 23, 2024, in the above-captioned matter as follows.

**NATURE OF THE ACTION**

1.  At all times referred to herein, Plaintiff Kathleen Stone ("Plaintiff" or "Coach Stone") was formerly employed by the President and Fellows of Harvard College ("Defendant Harvard" or "Harvard" or "the University") as head coach of Defendant Harvard's Division I women's ice hockey team.

**RESPONSE: Admitted.**

2.  Coach Stone, who served as the head coach for approximately twenty-nine (29) years, amassed an impressive and historical record, leading her team to over 500 victories and becoming a record-breaking symbol in women's coaching nationwide. She is recognized as a legend in women's ice hockey.

1

**RESPONSE: Defendant admits that Plaintiff served as head coach for approximately 29 years during which time the Women's Ice Hockey Team had over 500 victories. Defendant lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in Paragraph 2.**

3.    Until Harvard forced her to resign from her post as head coach in 2023, the only break in Coach Stone's service to Defendant Harvard came during the 2013-2014 season, when she stepped away to coach the U.S. Olympic Women's Hockey Team, becoming the first female head coach for U.S. Olympic hockey and proudly earning the United States a silver medal in the 2014 Olympic games.

**RESPONSE: Defendant admits that Plaintiff resigned from her position as head coach in 2023. Defendant admits that Plaintiff left Harvard in 2013-2014 to coach the U.S. Olympic Women's Hockey Team, becoming the first female head coach for U.S. Olympic hockey and that the U.S. Olympic Team won a silver medal in the 2014 Olympic Games. Defendant lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in Paragraph 3.**

4.    As head coach at the University, Coach Stone always fostered an environment of respect and dignity amongst her players.

**RESPONSE: Denied.**

5.    In or around January of 2023, Coach Stone found herself the victim of a targeted attack by the University after false reports of misconduct were made against Plaintiff by former players on Defendant Harvard's women's ice hockey team.

**RESPONSE: Denied.**

6.    Despite Harvard's public acknowledgement that the "women's ice hockey team has not fostered a culture of hazing," Defendant chose to disregard Coach Stone's record-breaking accomplishments and noted dedication to her team, as well as the University at large, in favor of openly targeting Coach Stone and tacitly endorsing the false accusations and false narratives surrounding her behavior. Sophia C. Scott, *Harvard Athletic Director Says No 'Culture of Hazing'*

*Found by Women's Ice Hockey Investigation*, The Harvard Crimson (June 29, 2023)
https://www.thecrimson.com/article/2023/6/29/athletics-hockey-investigation-response/.

> **RESPONSE**: **Denied. Further responding, Defendant respectfully refers the Court to the article cited in Paragraph 6 for its full substance and denies any characterization thereof.**

7.    Harvard's attack on Coach Stone is part and parcel of a larger culture at the University wherein female coaches are undervalued, underpaid, heavily scrutinized, and held to a breathtakingly more stringent standard of behavior than their male counterparts.

> **RESPONSE**: **Denied.**

8.    Where Defendant Harvard permits, if not openly encourages, male coaches to use their discretion in how best to coach and motivate the players on their respective teams, Coach Stone was harshly punished and excoriated for engaging in the same strategies and behaviors.

> **RESPONSE**: **Denied.**

9.    Moreover, where Defendant Harvard has repeatedly chosen to hold male coaches as separate from the often-inappropriate conduct of the players on their respective teams, Coach Stone received harsh criticism and disciple for the behavior of her players that she did not know occurred and never condoned.

> **RESPONSE: Denied.**

10.    Defendant Harvard's behavior towards Coach Stone, which agents and employees of the University have largely admitted was motivated, at least in part, by Coach Stone's gender, resulted not only in the public and irreparable attack on Coach Stone's character and reputation, but also in Plaintiff's forced early retirement and the premature conclusion of her storied career.

> **RESPONSE**: **Denied.**

11.    As a result of Defendant Harvard's discriminatory, unlawful, and improper conduct and actions, Coach Stone has suffered tremendous harm. Plaintiff's career in college athletics has

been effectively terminated, and she has been forced to endure tremendous reputational harm and emotional distress.

**RESPONSE: Paragraph 11 states legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 11.**

## THE PARTIES

12.    At all relevant times, Coach Stone was a resident of the Commonwealth of Massachusetts.

**RESPONSE: Defendant lacks information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 12.**

13.    Upon information and belief, Defendant President and Fellows of Harvard College was and is the duly empowered governing board of Harvard University, with a principal office located at Harvard University, Massachusetts Hall, Cambridge, Massachusetts 02138.

**RESPONSE: Defendant admits that President and Fellows of Harvard College is the formal name of Harvard University, a Massachusetts nonprofit educational corporation, and that the President's office is located in Massachusetts Hall, Cambridge, MA 02138.  Defendant denies the remaining allegations in Paragraph 13.**

14.    Upon information and belief, Defendants John and Jane Does 1-20 ("Doe Defendants'), are private individuals who have conspired against and defamed Coach Stone with the intent for it to impact Coach Stone in the Commonwealth of Massachusetts.

**RESPONSE: Defendant lacks information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 14.**

15.    Upon information and belief, Doe Defendants represent the officers, directors, representatives, employees, and/or managing agents of the named Defendants, whose identities are unknown at this time and who participated in the unlawful actions and/or inactions herein described.

**RESPONSE: Defendant lacks information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 15.**

16.     At all relevant times, Defendant Harvard was Coach Stone's "employer" as defined by all applicable Federal, State, and Local laws, including, but not limited to, Title VII of the Civil Rights Act of 1964, Mass. Gen. Laws ch. 151B, the Equal Pay Act of 1963, and the Massachusetts Act to Establish Pay Equity.

**RESPONSE: Paragraph 16 states a legal conclusion to which no response is required.**

17.     At all relevant times, Coach Stone was an "employee" of Defendant Harvard as defined by all applicable Federal, State, and Local laws, including, but not limited to, Title VII of the Civil Rights Act of 1964, Mass. Gen. Laws ch. 151B, the Equal Pay Act of 1963, and the Massachusetts Act to Establish Pay Equity.

**RESPONSE: Paragraph 17 states a legal conclusion to which no response is required.**

## JURISDICTION, VENUE, AND PROCEDURAL POSTURE

18.     This Court has federal question jurisdiction and supplemental jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367 because the federal law claims arise under the Constitution and statues of the United States, and the state law claims are so closely related to the federal law claims as to form the same case or controversy under Article III of the United States Constitution.

**RESPONSE**: **Paragraph 18 states a legal conclusion to which no response is required.**

19.     This Court has personal jurisdiction over Defendant Harvard on the grounds that it conducts business within the Commonwealth of Massachusetts.

**RESPONSE: Paragraph 19 states a legal conclusion to which no response is required.**

20.     This Court has personal jurisdiction over Doe Defendants on the grounds that they acted, upon information and belief, within the Commonwealth of Massachusetts which actions had the intentional impact upon Plaintiff within the Commonwealth of Massachusetts.

**RESPONSE: Paragraph 20 states a legal conclusion to which no response is required.**

21.     At all relevant times, the actions and events discussed herein transpired within the Commonwealth of Massachusetts.

**RESPONSE: Defendant lacks information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 21.**

22.     Venue for this action properly lies in this district pursuant to 28 U.S.C. § 1391 because Defendant Harvard is considered to reside in this judicial district, and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.

**RESPONSE: Paragraph 22 states a legal conclusion to which no response is required.**

23.     All conditions precedent to filing have been fulfilled.

**RESPONSE: Paragraph 23 states a legal conclusion to which no response is required.**

24.     Prior to filing a civil action for relief, Coach Stone filed a Charge of Discrimination simultaneously with the Massachusetts Commission Against Discrimination ("MCAD") and the Equal Employment Opportunity Commission ("EEOC"), to be investigated by the MCAD under the work-sharing agreement with the EEOC on January 3, 2024. Coach Stone withdrew her complaint from the MCAD on April 11, 2024, stating that she intended to file a private right of action with this Court.

**RESPONSE: Defendant admits that it received a copy of a Charge of Discrimination that Plaintiff appears to have filed on January 3, 2024 and that Plaintiff subsequently withdrew her charge. Defendant lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in Paragraph 24.**

25.     The MCAD issued a Dismissal of her complaint for her intended purpose on May 17, 2024. The EEOC issued a Notice of a Right to Sue on May 30, 2024.

**RESPONSE: Defendant admits that the MCAD dismissed Plaintiff's Charge of Discrimination on May 17, 2024, after she withdrew the Charge pursuant to 804 CMR 1.04(12)(2020), and that the EEOC issued a Dismissal and a Notice of Plaintiff's Right to Sue on May 30, 2024. Defendant lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in Paragraph 25.**

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

I.  **Coach Stone's Professional Background and Record- Breaking Employment as Head Coach of Defendant Harvard's Division I Women's Ice Hockey Team.[1]**

26.    Coach Stone commenced her employment as Harvard's head coach of the Women's Ice Hockey team during the 1994-1995 season.

**RESPONSE: Admitted.**

27.    Prior to working for Defendant Harvard, Plaintiff had coached at various academies and schools across Massachusetts and New Hampshire and built a reputation in athletics as a dedicated and effective coach.

**RESPONSE: Defendant lacks information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 27.**

28.    During her tenure at Harvard, Coach Stone cemented herself as a preeminent figure in college athletics and led the Harvard Crimson to over 500 victories and multiple titles.

**RESPONSE: Defendant admits that the Women's Ice Hockey team had over 500 victories while Plaintiff was head coach and obtained multiple titles. Defendant denies the remaining allegations in Paragraph 28.**

29.    As previously noted, Coach Stone briefly stepped away from her position at Defendant Harvard to coach the U.S. Olympic Women's Hockey Team, where she proudly earned the United States a silver medal in the 2014 Olympic games.

**RESPONSE: Defendant admits that Plaintiff left the head coach position to coach the U.S. Women's Olympic Team, and that the U.S. Olympic Team won a silver medal in the 2014 Olympic Games. Defendant lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in Paragraph 29.**

---

[1] Harvard repeats the headings and subheadings used in the Complaint here for ease of reference only and does not admit the contents of any such heading. For the avoidance of doubt, to the extent any heading or subheading in the Complaint is deemed to contain an allegation against Defendant, Defendant denies, generally and specifically, each and every allegation contained therein.

30.    Coach Stone's impressive record as Defendant Harvard's Women's Ice Hockey coach resulted in her being named the all-time "winningest" female coach in women's college hockey.

**RESPONSE: Defendant lacks information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 30.**

31.    Coach Stone personally dedicated herself to the betterment of Defendant Harvard's women's ice hockey program and, in particular, the individual players under her tutelage.

**RESPONSE: Denied.**

32.    Coach Stone strived to create, maintain, and foster an environment of trust, dignity, and respect between herself and her players, and always looked out for the physical, emotional, and mental well-being of the students on her team beyond just what the student athletes could do on the ice.

**RESPONSE: Denied.**

## II.    Coach Stone Advocates for Equal Pay After Defendant Harvard Admits to Paying Female Coaches Less Than Their Male Counterparts.[2]

33.    In or around the beginning of 2017, in anticipation of a change in law, Coach Stone, together with other female coaches at the University, began to fiercely advocate for pay transparency and parity between male and female coaches at Defendant Harvard.

**RESPONSE: Denied.**

34.    Coach Stone had numerous conversations with various members of Defendant Harvard's Athletics Department and administration regarding Defendant Harvard's anticipated efforts to bring compensation levels of male and female coaches into compliance with the new law.

**RESPONSE: Denied.**

---

[2] See supra, n. 1.

35.     Through these discussions, it became readily apparent to Coach Stone that she had been egregiously underpaid as compared to her male counterpart for years while employed by the University.

**RESPONSE: Denied.**

36.     In June of 2018, the University introduced a new model for coaches' compensation which focused on three main factors: (i) coaching level, (ii) program size, scope, responsibility, and complexity, and (iii) coach experience. However, this new model raised more questions than answers, and Coach Stone, together with her fellow female coaches, continued to raise concerns and place pressure on Defendant Harvard to reach pay equity amongst the male and female coaching staff.

**RESPONSE: Defendant admits the first sentence of Paragraph 36. Defendant denies the remaining allegations in Paragraph 36.**

37.     However, in response to the efforts of the University's female coaches, Defendant Harvard's administration admitted that the new model did not reach pay equity, would not reach pay equity, and there was nothing further Defendant Harvard intended to do to reach pay equity.

**RESPONSE: Denied.**

38.     Upon information and belief, Coach Stone continued to be paid at an egregiously lesser scale than the male head coach of the men's ice hockey team, who had less experience and success both in college and international hockey.

**RESPONSE: Denied.**

39.     Upon information and belief, Defendant Harvard relied upon wholly inappropriate and unlawful justifications for its intentional decision to compensate the men's ice hockey head coach at a higher pay scale.

**RESPONSE: Denied.**

40.    By way of example, and not limitation, at one point Defendant Harvard alleged, erroneously, that the men's ice hockey head coach deserved more compensation than Coach Stone "because he [meaning the male head coach of the men's ice hockey team] has to make quicker in-game decisions." Not only is this a wildly inappropriate excuse for unequal pay, but it is also entirely false, as the length of men's hockey games on average are longer than women's, as the time between whistle stoppages of play are extended for men's coaches during games.

**RESPONSE: Denied.**

41.    Upon information and belief, Coach Stone's salary was between $50,000 and $100,000 less than the men's ice hockey team's head coach's salary.

**RESPONSE: Denied.**

42.    It was not until July of 2022 that Coach Stone's salary was adjusted and increased by roughly $103,000.00 annually.

**RESPONSE: Defendant admits that in July of 2022, Plaintiff's salary was increased and adjusted by approximately $103,000 annually. Defendant denies the remaining allegations in Paragraph 42.**

43.    However, Defendant Harvard continued to hide the actual breakdown of coaches' salaries and refused to provide reasonable transparency in the compensation levels of male and female coaches, seemingly hoping instead that Coach Stone and other female coaching staff employees would be placated by misleading assurances of pay parity between the sexes.

**RESPONSE: Denied.**

44.    Upon information and belief, the head coach of the men's ice hockey team continued to receive a significantly higher compensation package than Coach Stone ever did.

**RESPONSE: Denied.**

### III.    Defendant Harvard Launches a Dual Investigation Against Coach Stone Based, in Part, on Confidential Data Purposefully Withheld from Coach Stone's Review.[3]

45.    In or around March of 2022, Coach Stone was notified that a two-prong investigation was being launched by the University into the women's ice hockey program and Plaintiff's actions as the program's head coach.

**RESPONSE: Denied.**

46.    The dual investigation purportedly stemmed from two bases.

**RESPONSE: Denied.**

47.    The first basis, which was investigated by the University's Human Resources ("HR") Department, stemmed from an incident that occurred on or about March 5, 2022, wherein Coach Stone used the phrase "too many chiefs and not enough Indians" when addressing her players in the locker room.

**RESPONSE: Defendant admits that an incident occurred on or about March 5, 2022 wherein Plaintiff used a phrase similar to "too many chief and not enough Indians" when addressing her players in the locker room and that Defendant's HR department conducted an investigation as a result of this incident. Defendant denies the remaining allegations in Paragraph 47.**

48.    At the time of the incident, Coach Stone immediately paused, recognized her poor word choice, apologized to the players in attendance, and went out of her way to apologize to players and staff that may not have been in attendance when the statement was uttered but who may have nevertheless been affected by her words.

**RESPONSE: Defendant lacks information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 48.**

49.    Shortly thereafter, in an effort to be fully transparent and forthcoming, Coach Stone reported the incident to her Sport Supervisor, Tim Troville ("Supervisor Troville").

---

[3] See supra, n. 1.

**RESPONSE: Defendant admits that Plaintiff reported the incident to Tim Troville. Defendant lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in Paragraph 49.**

50.    Immediately following the locker room incident, it came to light that, upon information and belief, Plaintiff's then-assistant coach, Sydney Daniels, had rallied support against Coach Stone from two team members and submitted a complaint to the University's Department of Equity and Inclusion, accusing Coach Stone of creating a toxic work environment.

**RESPONSE: Defendant admits that Sydney Daniels submitted a complaint to Defendant's HR department regarding Plaintiff. Defendant lacks information or knowledge sufficient to form a belief as to the truth of the allegation that Daniels "had rallied support against" Plaintiff. Defendant denies the remaining allegations in Paragraph 50.**

51.    The second basis of the dual investigation purportedly stemmed from data collected during Defendant Harvard's Mercer Study Survey (the "Mercer Study"). This portion of the dual investigation was referred to as the student-athlete experience review.

**RESPONSE: Defendant admits that Harvard completed a student-athlete experience review for the Women's Ice Hockey Team. Defendant denies the remaining allegations in Paragraph 51.**

52.    The Mercer Study was a survey implemented by the University's Athletic Department, at the direction of the then-Dean of Faculty of Arts and Sciences, Dr. Claudine Gay ("Dr. Gay"), with the full support and encouragement of Coach Stone, in 2020 to try and gauge the role of athletics at Defendant Harvard.

**RESPONSE: Denied.**

53.    Dr. Gay presently serves as the Wilbur A. Cowett Professor of Government and of African American Studies at Defendant Harvard. *See* Claudine Gay, Harvard University, Department of African American Studies, https://aaas.fas.harvard.edu/people/claudine-gay (last visited May 23, 2024).

**RESPONSE: Defendant admits that Dr. Gay serves as the Wilbur A. Cowett Professor of Government and of African and African-American Studies. Defendant respectfully refers**

the Court to the referenced webpage cited in Paragraph 53 for its full substance and denies any characterization thereof.

54.     Prior to her present role, Dr. Gay served as the President of Defendant Harvard. *See* Steve LeBlanc and Collin Binkley, *Harvard president Claudine Gay resigns amid plagiarism claims, backlash from antisemitism testimony*, The Associated Press (Jan. 2, 2024, updated 8:59 pm EDT),https://apnews.com/article/harvard-president-claudine-gay-resigns 841575b89bcdc062cdf979e647a2539e.

**RESPONSE:** Defendant admits that Dr. Gay served as the President of Defendant Harvard. Defendant respectfully refers the Court to the article cited in Paragraph 54 for its full substance and denies any characterization thereof.

55.     Dr. Gay, "just months into her tenure[,]" resigned her position on January 2, 2024, "amid plagiarism accusations and criticism over testimony at a congressional hearing." *Id.* See also, *Personal      News*,      Harvard      University,      Office      of      the      President, https://www.harvard.edu/president/news-gay/2024/personal-news/ (last visited May 24, 2024); Aaron Sibarium, *Harvard President Claudine Gay Hit with Six New Charges Of Plagiarism*, The Washington Free Beacon (Jan. 1, 2024), https://freebeacon.com/campus/harvard-president-claudine-gay-hit-with-six-new-charges-of-plagiarism/; Anemona Hartocollis, *What to know about the latest plagiarism accusations against Claudine Gay.*, The New York Times (Jan. 2, 2024) https://www.nytimes.com/2024/01/02/us/harvard-claudine-gay-plagiarism.html (highlighting that "[t]he new complaint added additional accusations of plagiarism to about 40 that had already been circulated…"); Miles J. Herszenhorn and Claire Tuan, *'I Am Sorry': Harvard President Gay Addresses Backlash Over Congressional Testimony on Antisemitism,* The Harvard Crimson (Dec. 8, 2023), https://www.thecrimson.com/article/2023/12/8/gay-apology-congressional-remarks/.

**RESPONSE:** Defendant admits that Dr. Gay resigned her position as President of Harvard University on January 2, 2024. Defendant further admits that Plaintiff partially quotes an article referred to in Paragraph 55. Defendant respectfully refers the Court to the articles cited in Paragraph 55 for their full substance and denies any characterization thereof.

56.    Though Coach Stone (or, upon information and belief, any other coach) never received the information contained in, nor the results of the Mercer Study to review and specifically respond to it, the women's hockey response rate and satisfaction levels in some categories were purportedly lower than those of other sports teams at the University.

**RESPONSE: Defendant admits that the Women's Ice Hockey Team's satisfaction levels in the Mercer Study were lower than other sports teams. Defendant denies the remaining allegations in Paragraph 56.**

57.    Notably, Defendant Harvard implemented the Mercer Study for the women's hockey team during the height of the COVID-19 pandemic while resultant shelter in place orders remained in effect and students were ordered to leave campus within three (3) days. Player morale across virtually all athletic teams was at an all-time low and apprehension about what was to come in light of a deadly pandemic sweeping the nation was at an all-time high.

**RESPONSE: Denied.**

58.    Still, upon information and belief, Dr. Gay categorized the women's hockey's survey response as a "red flag."

**RESPONSE: Denied.**

59.    Coach Stone fully and truthfully complied with Defendant Harvard's requests and requirements while conducting the dual investigation. Coach Stone was forthcoming in interviews and receptive to all feedback and suggestions for improvement.

**RESPONSE: Denied.**

60.    While the dual investigation was ongoing, Coach Stone continued to preside over the women's ice hockey team and care for her players albeit from afar, as Coach Stone was asked to limit her engagement with players until the review and investigation were complete.

**RESPONSE: Denied.**

61.    The dual investigation did not conclude until early July 2022.

**RESPONSE: Denied.**

62.     Specifically, on or about July 6, 2022, Coach Stone was telephonically notified that HR's investigation had concluded with a finding that Plaintiff did ***not*** create a toxic work environment and had ***not*** engaged in a "pattern of unprofessional conduct."

**RESPONSE: Denied.**

63.     On or about July 13, 2022, Coach Stone met with the University's Athletic Director, Erin McDermott ("Director McDermott") and Supervisor Troville regarding the conclusion of the student-athlete experience review.

**RESPONSE: Admitted.**

64.     At such time, Coach Stone, Director McDermott, and Supervisor Troville discussed the feedback from players on the team and instituted a Performance Improvement Plan ("PIP") for the upcoming season to address concerns raised by the players.

**RESPONSE: Denied.**

65.     Coach Stone, Director McDermott, and Supervisor Troville met again on or about September 8, 2022, to discuss the PIP.

**RESPONSE: Admitted.**

66.     The main focus of the PIP was to improve coach-player communications, flexibility regarding players' academic schedules, and address specific player feedback. The PIP did *not* note any negative findings against Coach Stone; it focused exclusively on areas where there may be room for improvement but did not otherwise note any deficiencies in Coach Stone's performance as a coach.

**RESPONSE: Denied.**

67.     The PIP also called for regular, monthly, meetings between Coach Stone and Supervisor Troville to review the PIP. Despite this, Supervisor Troville never actually met with Coach Stone until on or about November 30, 2022.

**RESPONSE: Defendant admits that the PIP called for monthly meetings between Plaintiff and Supervisor Troville and that Plaintiff and Supervisor Troville met on November 30, 2022. Defendant denies the remaining allegations in Paragraph 67.**

### IV.     Coach Stone Warns Harvard of an Impending Article in *The Boston Globe*.[4]

68.     On or about October 24, 2022, Coach Stone learned that a former player on her team had been contacted by a reporter from *The Boston Globe* in connection with an article being written regarding an investigation against Plaintiff.

**RESPONSE: Defendant lacks information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 68.**

69.     Upon information and belief, the Doe Defendants – acting in a personal vendetta against Coach Stone – shared false information with *The Boston Globe* regarding Plaintiff.

**RESPONSE: Defendant lacks information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 69.**

70.     The Doe Defendants consisted of a small group of individuals who, upon information and belief, included individuals of high net worth and in possession of unique power in their own employment.

**RESPONSE: Defendant lacks information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 70.**

71.     Upon information and belief, one of the Doe Defendants' close familial relations had been a prior athlete on Coach Stone's team.

**RESPONSE: Defendant lacks information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 71.**

---

[4] See supra, n. 1.

72.    Upon further information and belief, this former athlete became disgruntled for a lack of playing time, despite this player's underperformance.

**RESPONSE:** **Defendant lacks information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 72.**

73.    Upon information and belief, this resulted in a personal vendetta against Coach Stone, prompting this action.

**RESPONSE:** **Defendant lacks information  or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 73.**

74.    Coach Stone immediately reached out to Supervisor Troville to alert him that an article could be forthcoming.

**RESPONSE:** **Defendant admits that Plaintiff alerted Supervisor Troville that an article in the Boston Globe could be forthcoming. Defendant lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in Paragraph 74.**

75.    After alerting Supervisor Troville of the potential article, Coach Stone waited in anticipation to see how Defendant Harvard would respond.

**RESPONSE:** **Defendant lacks information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 75.**

76.    In the meantime, Coach Stone continued to coach and oversee the University's women's ice hockey team.

**RESPONSE:** **Admitted.**

77.    On or about January 18, 2023, Coach Stone virtually met with Director McDermott, Rachael Dane, the University's Press Secretary ("Press Secretary Dane"), Jennifer Kirby, the University's then-general counsel, and Andrea Zoia, the University's outside counsel, to discuss the anticipated article in *The Boston Globe.*

**RESPONSE:** **Defendant admits that Stone participated in a discussion with Harvard's in-house counsel, Jennifer Kirby, and outside counsel, Andrea Zoia, on or about January 18, 2023, which is protected by Harvard's attorney-client privilege and the work product doctrine. Defendant denies the remaining allegations in Paragraph 77.**

78.     During the virtual meeting, Coach Stone was advised not to engage with the journalist, Bob Hohler ("Journalist Hohler") or defend herself. Rather, Plaintiff was advised that Press Secretary Dane would submit a boilerplate response to Journalist Hohler's inquiries and requests for an interview or comment.

**RESPONSE: Denied.[5]**

79.     Coach Stone was repeatedly reassured that the article was nothing to be concerned about and told that her (meaning Plaintiff's) body of work and accomplishments would overshadow the article.

**RESPONSE: Denied.[6]**

**V.     Defendant Harvard Admits the Treatment Coach Stone Received Would be Different if She Were a Man and Commences Another Investigation Against Her.[7]**

80.     On January 27, 2023, *The Boston Globe* published an article purporting to expose Coach Stone as an angry and abusive coach.

**RESPONSE: Defendant admits that on January 27, 2023, The Boston Globe published an article titled "*A culture of complete fear: Harvard women's hockey coach Katey Stone under fire for alleged abusive behavior*." Defendant respectfully refers the Court to the article for its contents and denies any characterization thereof.**

81.     Upon information and belief, the Doe Defendants contacted Defendant Harvard regarding the content of their allegations, and upon further information and belief, urged Defendant Harvard to take action regarding the employment of Coach Stone.

**RESPONSE: Defendant lacks information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 81.**

---

[5] Plaintiff's allegations misrepresent and mischaracterize the substance and nature of the discussion with counsel. The substance of the discussion with counsel is protected by Harvard's attorney-client privilege and the work product doctrine.
[6] See supra, n. 5.
[7] See supra, n. 1.

82.     The next day, Plaintiff spoke with Director McDermott who advised she had been in conversations with Dr. Gay and Defendant Harvard's then-President about the article. Coach Stone again offered to tell her side of the narrative and address the allegations in the article.

**RESPONSE: Defendant admits that on or about January 28, 2023, Plaintiff and Director McDermott spoke about the Boston Globe article. Defendant denies the remaining allegations in Paragraph 82.**

83.     During this conversation, Coach Stone remarked that she would not have been or continue to be treated the way that she had been up to that point had she been a man.

**RESPONSE: Denied.**

84.     Director McDermott agreed with Coach Stone and remarked "this wouldn't be happening to a men's coach" – a shocking admission and endorsement by a senior official at Harvard.

**RESPONSE: Denied.**

85.     Coach Stone spoke again to Director McDermott and Press Secretary Dane on or about January 30, 2023, and again offered to address the allegations in Journalist Hohler's article.

**RESPONSE: Defendant admits that Director McDermott and Press Secretary Dane spoke with Plaintiff on or about January 30, 2023. Defendant denies the remaining allegations in Paragraph 85.**

86.     In response, Director McDermott and Press Secretary Dane vehemently advised that Coach Stone refrain from defending herself and allow the story to, essentially, blow over with time.

**RESPONSE: Denied.**

87.     After dissuading, if not outrightly prohibiting, Coach Stone from defending herself against the article's allegations, Defendant Harvard swiftly and definitively turned its back on Coach Stone, initiated yet another investigation against Plaintiff, and tacitly endorsed and condoned the spreading of false narratives and accusations harming Coach Stone's personal and professional reputation.

**RESPONSE: Denied.**

88.    Specifically, in or around March of 2023, Defendant Harvard retained outside counsel to investigate Coach Stone and reports regarding Plaintiff's performance as the women's ice hockey coach.

**RESPONSE: Defendant admits that it retained outside counsel in or around March 2023 to conduct a confidential investigation, which is protected by Harvard's attorney-client privilege and the work product doctrine. Defendant otherwise denies the allegations in Paragraph 88.**

89.    The new investigation was instituted to review the allegations in the article, as well as allegations that Coach Stone had permitted "naked skates", along with other allegedly inappropriate behavior occurring during a "Freshman Fun Night".

**RESPONSE: Defendant admits that it retained outside counsel in or around March 2023 to conduct a confidential investigation, which is protected by Harvard's attorney-client privilege and the work product doctrine. Defendant otherwise denies the allegations in Paragraph 89.**

90.    Coach Stone had not had any actual knowledge of or when naked skates were being conducted by her team or of any inappropriate behavior that allegedly occurred during team gatherings.

**RESPONSE: Denied.**

91.    To the extent that any such alleged actions did occur, these were solely engaged in by the players and never sanctioned, let alone mandated or expected of the students, by Coach Stone. To the contrary, Coach Stone made it inescapably clear that hazing or hazing-like behavior was strictly prohibited and would not be tolerated under any circumstances.

**RESPONSE: Denied.**

92.    Notably, after being informed (for the first time) of potentially inappropriate behavior happening at these gatherings, it was *Coach Stone* herself who had brought such details to Defendant Harvard's, specifically Supervisor Troville's, attention.

**RESPONSE**: **Denied.**

93.    The University's actions against Plaintiff stood in stark contrast to Defendant Harvard's response to male coaches engaged in similar conduct.

**RESPONSE**: **Denied.**

94.    Indeed, Defendant Harvard has long accepted, if not outright approved and encouraged, behavior akin to the allegations against Coach Stone from its male coaches and staff without incident.

**RESPONSE**: **Denied.**

95.    By way of example, but not limitation, upon information and belief, the Men's Swimming and Diving Team engage in jumping from their diving board "naked." Upon information and belief, Defendant Harvard has taken no action regarding this information.

**RESPONSE**: **Denied.**

96.    Upon further information and belief, male athletes engage in "Primal Scream" before examinations in December, which also involves nudity. Upon information and belief, Defendant Harvard has taken no action regarding this information.

**RESPONSE**: **Denied.**

97.    Female coaches, as well as their female student athletes, on the other hand, are treated vastly different.

**RESPONSE**: **Denied.**

98.    Male coaches at Defendant Harvard are routinely observed using profanity in their coaching of male players, without consequence; whereas these same words have been deemed "inappropriate" or "abusive" when used by a female coach.

**RESPONSE**: **Denied.**

99.    Where female coaches, such as Coach Stone, are expected to be nurturing towards their female players and coach with compassion and sensitivity, male coaches are allowed to be "tough" and hold their male players accountable for their actions, level of play, and effort.

**RESPONSE: Denied.**

100.    Unlike the University's treatment of female coaches, Defendant Harvard has granted some male coaches a free pass to coach, motivate, and speak to Defendant Harvard's male student athletes as the male coaches see fit.

**RESPONSE: Denied.**

101.    At all times relevant to this Complaint, Coach Stone has used her best judgment, which has resulted in landmark success for the University, to coach, mentor, and generally interact with the players on her team.

**RESPONSE: Denied.**

102.    Coach Stone's tactics and behavior never significantly differed from that of her male colleagues. Yet, it was Coach Stone that was excoriated by Defendant Harvard for the same actions and behaviors the University applauded from its male coaching staff.

**RESPONSE: Denied.**

103.    Moreover, male coaches at Defendant Harvard have been able to retain their head coach positions even after their respective teams and players have been publicly found to engage in gross misconduct.

**RESPONSE: Denied.**

104.    Male coaches at Defendant Harvard enjoy a disconnect from their players' behavior that offers them a safeguard against discipline if/when the students act inappropriately. This safeguard is non-existent for the female coaching staff.

**RESPONSE: Denied.**

105.     By way of example, but not limitation, the University's men's soccer team came under investigation in 2016 after it was reported that team members, for years prior, had annually maintained and shared a lewd document ranking members of the University's female soccer team based on their sex appeal.

**RESPONSE: Denied.**

106.     Although the University suspended the remainder of the team's season, the male head coach of the men's soccer team at the time continued in his post until 2019, and upon information and belief, was never accused of misconduct based on his players' actions.

**RESPONSE: Denied.**

107.     By way of further example, but not limitation, during the investigation into the men's soccer team "scouting report" ranking female athletes based on their sex appeal, it was discovered that the University's men's cross-country team had engaged in similar and ongoing practices.

**RESPONSE: Denied.**

108.     Although the University denounced the practice as "demeaning and derogatory", Harvard permitted the male head coach of the men's cross country team to remain in his position. In fact, he continues to serve as the University's men's and women's cross country head coach.

**RESPONSE: Denied.**

109.     That same coach, upon information and belief, was never held personally responsible for the behavior of his players and was never personally accused of misconduct based on the players' actions.

**RESPONSE: Denied.**

110.    Even when Defendant Harvard has responded to allegations regarding *actual* misconduct by male coaches, it has only done so after complaints reached a critical point where the misconduct could no longer be ignored.

**RESPONSE: Denied.**

111.    By way of example, but not limitation, in or around the 2014-2015 season, Defendant Harvard hired Patrick Wales-Dinan ("Coach Wales-Dinan"), a male, to be the women's long distance running coach.

**RESPONSE: Defendant admits that, in or around the 2014-2015 season, Harvard hired Wales-Dinan, a male, as Associate Head Cross Country Coach and Assistant Track & Field Coach. Defendant denies the remaining allegations in Paragraph 111.**

112.    Upon information and belief, Defendant Harvard knew of Coach Wales-Dinan's abusive reputation and, by virtue of hiring Coach Wales-Dinan, tacitly condoned and invited such behavior into Defendant Harvard's program.

**RESPONSE: Denied.**

113.    Specifically, it was reported that during a team meeting before the start of Coach Wales-Dinan's first season with the University, Coach Wales-Dinan had told the team that several of his former players from other institutions had contacted the coach of the men's cross country team to express concern over Coach Wales-Dinan's tactics, but the coach of the men's cross country team had disregarded the communications.

**RESPONSE: Denied.**

114.    Several of the players under Coach Wales-Dinan's tutelage left the University's program and on multiple occasions reported that Coach Wales- Dinan had engaged in behavior that could easily be characterized as hazing and/or otherwise abusive.

**RESPONSE: Denied.**

115.    Defendant Harvard did nothing in response to these multiple reports, thereby permitting Coach Wales-Dinan to continue coaching the team as he deemed appropriate, even if such tactics were notoriously abusive and hurtful to the students.

**RESPONSE: Denied.**

116.    It was only after a video of Coach Wales-Dinan's antics publicly surfaced that the University took any action to look into the many reports against Coach Wales-Dinan that it had let linger. As a result of the supposed investigation, Coach Wales-Dinan was permitted to step down from his post in or around 2017.

**RESPONSE: Denied.**

117.    Unlike Coach Wales-Dinan, Coach Stone never engaged in any professional misconduct-Plaintiff simply engaged in well-respected and common coaching strategies that Defendant Harvard had permitted its male coaches to deploy when coaching their respective teams.

**RESPONSE: Denied.**

118.    Also unlike Coach Wales-Dinan and the other above examples, Defendant Harvard offered Coach Stone no leniency, understanding, or support in the face of what Defendant Harvard ultimately deemed to be unsubstantiated reports of misconduct.

**RESPONSE: Denied.**

119.    By comparison, Harvard immediately investigated Coach Stone, in essence, for daring to coach her team in the same vein as her male colleagues and being unaware of actions of her team when not under her supervision or direction.

**RESPONSE: Denied.**

120.    Disheartened at Defendant Harvard's response to the article and biased response to false allegations against her, Coach Stone still endeavored to fully cooperate with the investigation.

**RESPONSE: Denied.**

121.    To that end, Coach Stone met with the University's retained attorney-investigator and submitted binders of materials related to her response to the allegations and the improvements she had steadily made following the start of the PIP.

**RESPONSE: Defendant admits that Plaintiff met with Harvard's outside counsel in connection with its confidential investigation, which is protected by Harvard's attorney-client privilege and the work product doctrine. Defendant lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in Paragraph 121.**

122.    While the investigation remained ongoing, scores of news outlets repeatedly reported on the false accusations of hazing and misconduct against Coach Stone, going so far as to post Coach Stone's picture over multiple news and media outlets.

**RESPONSE: Defendant admits that multiple news outlets covered allegations regarding Stone. Defendant lacks information or knowledge sufficient to form a belief as to the truth of the allegation that news outlets posted Stone's picture over multiple news and media outlets. Defendant denies the remaining allegations in Paragraph 122.**

123.    Although many of Plaintiff's former and then-current players came forward to defend Coach Stone, Defendant Harvard did nothing to quell the mounting negative press against its own coach, choosing instead to remain silent and, therefore, complicit in the ongoing assassination of Coach Stone's character and reputation.

**RESPONSE: Denied.**

VI.    **Coach Stone is Forced to Retire.**[8]

124.    In or around May of 2023, Defendant Harvard advised Coach Stone that it did not intend to bring her back for the 2023-2024 season, thereby terminating Plaintiff's employment effective at the end of the 2022-2023 academic year.

---

[8] See supra, n. 1.

**RESPONSE: Defendant admits that in or around May of 2023, Defendant informed Plaintiff that it did not intend to bring her back for the 2023-2024 season. Defendant denies the remaining allegations in Paragraph 124.**

125.    Faced with, in essence, an ultimatum of retire or be terminated and further publicly humiliated, offered by an administration that admitted that the situation would have been handled differently had Coach Stone been a man, Coach Stone retired from Defendant Harvard, effective June 30, 2023.

**RESPONSE: Defendant admits that Stone retired from Harvard, effective June 30, 2023. Defendant denies the remaining allegations in Paragraph 125.**

126.    Defendant Harvard's public announcement regarding the end of Coach Stone's tenure occurred on or around June 6, 2023.

**RESPONSE: Admitted.**

127.    After forcing Coach Stone into retirement, Defendant Harvard announced that it determined that the "women's ice hockey team ha[d] ***not*** fostered a culture of hazing." (emphasis added). Sophia C. Scott, Harvard Athletic Director Says No 'Culture of Hazing' Found by Women's Ice Hockey Investigation, The Harvard Crimson (June 29, 2023) https://www.thecrimson.com/article/2023/6/29/athletics-hockey-investigation-response/.

**RESPONSE: Defendant admits that Harvard announced that "[o]ur current women's ice hockey team has not fostered a culture of hazing" and that Plaintiff partially quotes from the article referenced in Paragraph 127. Defendant denies the remaining allegations in Paragraph 127 and respectfully refers the Court to the article cited in Paragraph 127 for its full substance and denies any characterization thereof.**

128.    Once again, Defendant Harvard's actions towards Plaintiff Stone stood in stark contrast to its treatment of male coaches who performed their coaching jobs at Defendant Harvard in a similar, if not more intense, manner and who were indirectly aware of their team's activities after hours.

**RESPONSE: Denied.**

129.    These coaches were supported or even rewarded by Harvard. Harvard Athletics Reveals Coach of Excellence Award Recipients, Harvard University Athletics (Sept. 6, 2023) https://gocrimson.com/news/2023/9/6/general-harvard-athletics-reveals-coach-of-excellence-awardrecipients#:~:text=The%20Ragatz%20Family%20Harvard%20Women's,Herscot%20'58% 20Coach%20of%20Ecellence.

**RESPONSE: Denied. Further responding, Defendant respectfully refers the Court to the article cited in Paragraph 129 for its full substance and denies any characterization thereof.**

130.    In stark contrast, Coach Stone was scrutinized, investigated, and forced to pay the ultimate price - the loss of her reputation and career.

**RESPONSE: Denied.**

131.    Defendant Harvard's actions and treatment of Coach Stone has nearly made certain that she will not be able to coach again at the collegiate level.

**RESPONSE: Denied.**

132.    As a further result of Defendant Harvard's actions and/or inactions, Coach Stone has not only suffered financially, in the form of the loss of her employment, but has suffered immense trauma and emotional turmoil.

**RESPONSE: Paragraph 132 states legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 132.**

## COUNT 1

### Discrimination on the Basis of Sex/Gender
### Violation of Title VII of the Civil Rights Act of 1964
### (Against Defendant Harvard)

133.    Plaintiff repeats and realleges each and every allegation hereinabove as if fully set forth herein.

**RESPONSE: Harvard incorporates its responses to Paragraphs 1-132 as if fully set forth herein.**

134.    Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et. seq., prohibits an employer from discriminating against any employee on the basis of their sex.

**RESPONSE: Paragraph 134 states a legal conclusion to which no response is required.**

135.    Plaintiff is a female and is, therefore, a member of a protected class under Title VII of the Civil Rights Act of 1964.

**RESPONSE: Paragraph 135 states a legal conclusion to which no response is required.**

136.    Plaintiff was and is qualified to work as an employee for Defendant Harvard and she satisfactorily performed the duties required by all positions she held with Defendant Harvard.

**RESPONSE: Denied.**

137.    As set forth in detail herein and above, Defendant Harvard subjected Plaintiff to disparate treatment and an atmosphere of adverse employment actions and decisions because of her gender.

**RESPONSE: Paragraph 137 states a legal conclusion to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 137.**

138.    The gender discrimination that Plaintiff suffered while employed with Defendant Harvard severely affected the terms and conditions of her employment, and culminated in the discontinuation of her employment and forced early retirement.

**RESPONSE: Paragraph 138 states a legal conclusion to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 138.**

139.    By reason of Defendant Harvard's violations of Plaintiff's rights, Plaintiff has suffered a loss of monetary and other benefits associated with her employment.

**RESPONSE: Paragraph 139 states a legal conclusion to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 139.**

140.    As a direct and proximate result of said unlawful employment practices, Plaintiff has suffered, among other things, emotional distress, financial losses, and reputational damage.

**RESPONSE: Paragraph 140 states a legal conclusion to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 140.**

141.    Based on the foregoing, Defendant Harvard discriminated against Plaintiff on the basis of her gender in violation of Title VII of the Civil Rights Act of 1964.

**RESPONSE: Paragraph 141 states a legal conclusion to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 141.**

142.    As a result of Defendant Harvard's violations of Title VII of the Civil Rights Act of 1964, Defendant Harvard is liable to Plaintiff for damages in an amount to be determined but in no case less than $5,000,000.00.

**RESPONSE: Paragraph 142 states a legal conclusion to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 142.**

<u>**COUNT II**</u>

**Discrimination on the Basis of Sex/Gender**
**Violation of Mass. Gen. Laws ch. 151B**
**(Against Defendant Harvard)**

143.    Plaintiff repeats and realleges each and every allegation hereinabove as if fully set forth herein.

**RESPONSE: Harvard incorporates its responses to Paragraphs 1-142 as if fully set forth herein.**

144.    Plaintiff is a female and is, therefore, a member of a protected class under Mass. Gen. Laws ch. 151B.

**RESPONSE**: **Paragraph 144 states a legal conclusion to which no response is required.**

145.    Plaintiff was and is qualified to work as an employee for Defendant Harvard and she satisfactorily performed the duties required by all positions she held with Defendant Harvard.

**RESPONSE: Denied.**

146.    As set forth in detail herein and above, Defendant Harvard subjected Plaintiff to disparate treatment and an atmosphere of adverse employment actions and decisions because of her gender.

**RESPONSE: Paragraph 146 states legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 146.**

147.    The gender discrimination that Plaintiff suffered while employed with Defendant Harvard severely affected the terms and conditions of her employment, and culminated in the discontinuation of her employment and forced early retirement.

**RESPONSE: Paragraph 147 states legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 147.**

148.    By reason of Defendant Harvard's violations of Plaintiff's rights, Plaintiff has suffered a loss of monetary and other benefits associated with her employment.

**RESPONSE: Paragraph 148 states legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 148.**

149.    As a direct and proximate result of said unlawful employment practices, Plaintiff has suffered, among other things, emotional distress, financial losses, and reputational damage.

**RESPONSE: Paragraph 149 states legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 149.**

150.    Based on the foregoing, Defendant Harvard discriminated against Plaintiff on the basis of her gender in violation of Mass. Gen. Laws ch. 151B.

**RESPONSE: Paragraph 150 states a legal conclusion to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 150.**

151.    As a result of Defendant Harvard's violations of Mass. Gen. Laws ch. 151B, Defendant Harvard is liable to Plaintiff for damages in an amount to be determined but in no case less than $5,000,000.00.

**RESPONSE: Paragraph 151 states a legal conclusion to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 151.**

## COUNT III

**Failure to Pay Equal Wages**
**Violation of the Federal Equal Pay Act of 1963 ("EPA")**
**(Against Defendant Harvard)**

152.    Plaintiff repeats and realleges each and every allegation hereinabove as if fully set

forth herein.

**RESPONSE: Harvard incorporates its responses to Paragraphs 1-151 as if fully set forth herein.**

153.    The EPA, as amended, provides, in relevant part, that,

> No employer … shall discriminate … between employees on the basis of sex by paying wages to employees in such establishment at  a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on the jobs performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions… 29 U.S.C. Section 206(d).

**RESPONSE: Paragraph 153 states a legal conclusion to which no response is required.**

154.    As set forth in detail herein and above, Defendant Harvard routinely underpaid

Plaintiff, and other female coaches, relative to their male counterparts in violation of the EPA.

**RESPONSE: Paragraph 154 states a legal conclusion to which no response is required.**

155.    Defendant Harvard has no legal basis for the continued and intentional

underpayment of its female coaches, including, but not limited to, Coach Stone.

**RESPONSE: Paragraph 155 states a legal conclusion to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 155.**

156.    Accordingly, Defendant Harvard discriminated against Coach Stone in the terms and

conditions of Plaintiff's salary and compensation in violation of the EPA.

**RESPONSE: Paragraph 156 states a legal conclusion to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 156.**

157.    As a result of Defendant Harvard's violations of the EPA, Defendant Harvard is liable to Plaintiff for damages in an amount to be determined but in no case less than $5,000,000.00.

**RESPONSE: Paragraph 157 states a legal conclusion to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 157.**

## COUNT IV

**Failure to Pay Equal Wages**
**Violation of the Massachusetts Act to Establish Pay Equity ("MEPA")**
**(Against Defendant Harvard)**

158.    Plaintiff repeats and realleges each and every allegation hereinabove as if fully set forth herein.

**RESPONSE: Harvard incorporates its responses to Paragraphs 1-157 as if fully set forth herein.**

159.    The MEPA, as amended, provides, in relevant part, that,

> No employer shall discriminate in any way on the basis of gender in the payment of wages, or pay any person in its employ a salary of wage rate less than the rates paid to its employees of a different gender for comparable work. M.G.L. c. 149, Section 105A(b).

**RESPONSE: Paragraph 159 states a legal conclusion to which no response is required.**

160.    As set forth in detail herein and above, Defendant Harvard routinely underpaid Plaintiff, and other female coaches, relative to their male counterparts in violation of the MEPA.

**RESPONSE: Paragraph 160 states a legal conclusion to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 160.**

161.    As set forth in detail herein and above, even after the MEPA was amended in or around July of 2018, Defendant Harvard admittedly failed to recalculate Plaintiff's salary to bring her on par with and equal to her male counterparts with regard to Plaintiff's salary and compensation.

**RESPONSE: Paragraph 161 states a legal conclusion to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 161.**

162.    Defendant Harvard has no legal basis for the continued and intentional underpayment of its female coaches, including, but not limited to, Coach Stone.

**RESPONSE: Paragraph 162 states a legal conclusion to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 162.**

163.    Accordingly, Defendant Harvard discriminated against Coach Stone in the terms and conditions of Plaintiff's salary and compensation in violation of the MEPA.

**RESPONSE: Paragraph 163 states a legal conclusion to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 163.**

164.    As a result of Defendant Harvard's violations of the MEPA, Defendant Harvard is liable to Plaintiff for damages in an amount to be determined but in no case less than $5,000,000.00.

**RESPONSE: Paragraph 164 states a legal conclusion to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 164.**

## COUNT V

### Retaliation
**Violation of Title VII of the Civil Rights Act of 1964, the Massachusetts Act to Establish Pay Equity, the Federal Equal Pay Act of 1963, and Mass. Gen. Laws ch. 151B (Against Defendant Harvard)**

165.    Plaintiff repeats and realleges each and every allegation hereinabove as if fully set forth herein.

**RESPONSE: Harvard incorporates its responses to Paragraphs 1-164 as if fully set forth herein.**

166.    As set forth in detail above, Defendant Harvard subjected Coach Stone to discrimination on the basis of her gender/sex.

**RESPONSE: Paragraph 166 states a legal conclusion to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 166.**

167.    Coach Stone complained to Defendant Harvard about the discriminatory and unfair treatment she experienced, including the unfair and disparate pay gap instituted by Harvard.

**RESPONSE: Denied.**

168.    In response, Defendant Harvard agreed that Coach Stone would have been treated differently if she were a male yet failed to carry out any thorough investigation into the merits of Coach Stone's reports or take any remedial action.

**RESPONSE: Denied.**

169.    Instead, Defendant Harvard used Coach Stone as a scapegoat, persisted in permitting a false narrative impugning Coach Stone's reputation, and ultimately forced Coach Stone to pay the ultimate price and untimely resign from her position.

**RESPONSE: Denied.**

170.    By reason of Defendant Harvard's violations of Plaintiff's rights, Plaintiff has suffered a loss of monetary and other benefits associated with her employment.

**RESPONSE: Paragraph 170 states a legal conclusion to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 170.**

171.    As a direct and proximate result of said unlawful employment practices, Plaintiff has suffered, among other things, emotional distress, financial losses, and reputational damage.

**RESPONSE: Paragraph 171 states a legal conclusion to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 171.**

172.    Based on the foregoing, Defendant Harvard retaliated against Plaintiff in violation of Title VII of the Civil Rights Act of 1962, the Mass. Gen. Laws ch. 151B, the Massachusetts Act to Establish Pay Equity, and the Federal Equal Pay Act of 1963.

**RESPONSE: Paragraph 172 states a legal conclusion to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 172.**

173.    As a result of Defendant Harvard's violations of Plaintiff's statutory rights, Defendant Harvard is liable to Plaintiff for damages in an amount to be determined but in no case less than $5,000,000.00.

**RESPONSE: Paragraph 173 states a legal conclusion to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 173.**

<u>COUNT VI</u>

**Defamation  (Against the Doe Defendants)**

174.    Plaintiff repeats and realleges each and every allegation hereinabove as if fully set forth herein.

**<u>RESPONSE</u>: Harvard incorporates its responses to Paragraphs 1-173 as if fully set forth herein.**

175.    To establish a defamation claim under Massachusetts law, a plaintiff must demonstrate: "(1) that the defendant made a statement, concerning the plaintiff, to a third party; (2) that the statement was defamatory such that it could damage the plaintiff's reputation in the community; (3) that the defendant was at fault in making the statement; and (4) that the statement either caused the plaintiff economic loss …or is actionable without proof of economic loss." *Shay v. Walters*, 702 F.3d 76, 81 (1st Cir.2012), citing *Ravnikar v. Bogojavlensky*, 438 Mass. 627, 782 N.E.2d 508, 510-11 (2003) (internal quotation marks and alterations omitted); see also *Hampton v. Ashok*, 93 Mass. App. Ct. 1102, 103 N.E.3d 767 (2018).

**<u>RESPONSE</u>: Paragraph 175 states a legal conclusion to which no response is required.**

176.    There are four types of actionable statements without proof of economic loss, including "statements that constitute libel" and "statements that may prejudice the plaintiff's profession or business." *Alharbi v. Theblaze, Inc.,* 199 F. Supp. 3d 334, 351 (D. Mass. 2016) (citing *Ravnikar*, 782 N.E.2d at 511).

**<u>RESPONSE</u>: Paragraph 176 states a legal conclusion to which no response is required.**

177.    Statements that are provable as false are actionable.  *Alharbi*, 199 F. Supp. 3d at 353, citing *Veilleux v. Nat'l Broad. Co*., 206 F.3d 92, 108 (1st Cir. 2000), quoting *Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 19 - 20, 110 S.Ct.2695, 111 L.Ed.2d 1 (1990).

**<u>RESPONSE</u>: Paragraph 177 states a legal conclusion to which no response is required.**

178. '"Damages in a defamation case are limited to actual damages, which are compensatory for the wrong that has been done."' *Alharbi*, 199 F. Supp. 3d at 359, quoting *Draghetti v. Chmielewski*, 416 Mass. 808, 626 N.E.2d 862, 868 (1994). "Actual injury includes not only out-of-pocket expenses, but also harm inflicted by impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering." *Id*. "With mental suffering, the plaintiff is entitled to recover for the distress and anxiety which may have been the natural result of the legal wrong." *Alharbi*, 199 F. Supp. 3d at 359, quoting *Shafir v. Steele*, 431 Mass. 365, 727 N.E.2d 1140, 1146 (2000).

**RESPONSE: Paragraph 178 states a legal conclusion to which no response is required.**

179. The Doe Defendants made several false statements regarding Plaintiff for which she seeks relief.

**RESPONSE: Defendant lacks information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 179.**

180. Upon information and belief, the Doe Defendants stated that Coach Stone had engaged in hazing and fostered a culture of hazing prior to, and after, the publication of the article in *The Boston Globe*. However, not only are these statements verifiably false, but also Defendant Harvard announced that they had found that the "women's ice hockey team *ha[d] not* fostered a culture of hazing." (emphasis added).

**RESPONSE: Defendant lacks information or knowledge sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 180. Defendant admits that it announced "[o]ur current women's ice hockey team has not fostered a culture of hazing." Defendant denies the remaining allegations in Paragraph 180.**

181. Upon information and belief, the Doe Defendants made these statements to third parties, including but not limited to *The Boston Globe* and Defendant Harvard University, with the intent to harm Coach Stone's reputation and cause adverse action with respect to her employment with the University.

**RESPONSE: Defendant lacks information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 181.**

182.    Although their exact identities are unknown at this time, the Doe Defendants indeed made the statements referenced above.

**RESPONSE: Defendant lacks information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 182.**

183.    As a result of the defamatory statements, Plaintiff Stone has suffered reputational damage and economic loss, including but not limited to loss of employment, loss of income from employment, loss of future income, severe emotional distress, and personal humiliation.

**RESPONSE: Paragraph 183 states a legal conclusion to which no response is required.**

184.    Based upon the foregoing, the Doe Defendants have defamed Coach Stone in violation of Massachusetts law.

**RESPONSE: Paragraph 184 states a legal conclusion to which no response is required.**

185.    As a further result of the Doe Defendants' actions, the Doe Defendants are liable to Plaintiff for damages in an amount to be determined but in no case less than $5,000,000.

**RESPONSE: Paragraph 185 states a legal conclusion to which no response is required.**

## COUNT VII

### Civil Conspiracy (Against the Doe Defendants)

186.    Plaintiff repeats and realleges each and every allegation hereinabove as if fully set forth herein.

**RESPONSE: Harvard incorporates its responses to Paragraphs 1-185 as if fully set forth herein.**

187.    To succeed on a claim for civil conspiracy, a plaintiff must demonstrate either one of the two following theories: "that the defendants engaged in concerted action to commit a tort against the plaintiff" or, alternatively, "if there was no independent basis for imposing tort liability,

that the defendants combined to accomplish an unlawful purpose (or a lawful purpose by unlawful means) through some peculiar power of coercion over the plaintiff that they would not have had if they acted individually." *Conley v. Doe*, No. 011569F, 2001 WL 1526947, at *4 (Mass. Super. Oct. 1, 2001)

      <u>**RESPONSE**</u>**: Paragraph 187 states a legal argument to which no response is required.**

188.    Upon information and belief, the Doe Defendants falsely stated that Coach Stone had engaged in hazing and fostered a culture of hazing.

      <u>**RESPONSE**</u>**: Defendant lacks information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 188.**

189.    However, Defendant Harvard announced that they had found that Plaintiff had *not* engaged in hazing or fostered a culture of hazing.

      <u>**RESPONSE**</u>**: Defendant admits that it announced "[o]ur current women's ice hockey team has not fostered a culture of hazing." Defendant denies the remaining allegations in Paragraph 189.**

190.    Upon information and belief, the Doe Defendants made these statements to third parties, including but not limited to *The Boston Globe* and Defendant Harvard University, with the intent to defame Coach Stone and harm her reputation, and cause adverse action with respect to her contracted employment with the University.

      <u>**RESPONSE**</u>**: Defendant lacks information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 190.**

191.    Upon information and belief, the Doe Defendants possessed unique power as a group due to the affluent nature of the individuals of this small group.

      <u>**RESPONSE**</u>**: Defendant lacks information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 191.**

192.    Upon information and belief, a person in this group's close familial relation had been a prior athlete on Coach Stone's team.  Upon further information and belief, this athlete became disgruntled for a lack of playing time, despite this player's underperformance.

**RESPONSE: Defendant lacks information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 192.**

193.    Upon information and belief, this resulted in a personal vendetta against Coach Stone which motivated the Doe Defendants to take action against her.

**RESPONSE: Defendant lacks information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 193.**

194.    Based on the foregoing, the Doe Defendants have committed civil conspiracy against Coach Stone in violation of Massachusetts law.

**RESPONSE: Paragraph 194 states a legal conclusion to which no response is required.**

195.    As a direct and proximate result of said unlawful conduct, Plaintiff has suffered, among other things, emotional distress, financial losses, and reputational damage.

**RESPONSE: Paragraph 195 states a legal conclusion to which no response is required.**

196.    As a further result of the Doe Defendants' actions, the Doe Defendants are liable to Plaintiff for damages in an amount to be determined but in no case less than $5,000,000.

**RESPONSE: Paragraph 196 states a legal conclusion to which no response is required.**

## COUNT VIII

**Intentional Interference with Contractual Relations (Against the Doe Defendants)**

197.    Plaintiff repeats and realleges each and every allegation hereinabove as if fully set forth herein.

**RESPONSE: Harvard incorporates its responses to Paragraphs 1-196 as if fully set forth herein.**

198.    To establish a claim for intentional interference with contractual relations, plaintiff must '"prove that: (1) [s]he had a contract with a third party; (2) the defendant knowingly induced the third party to break that contract; (3) the defendant's interference, in addition to being intentional, was improper in motive or means; and (4) the plaintiff was harmed by the defendant's actions.'"  *Clayman v. McLaughlin*, No. 1684CV2373, 2017 WL 4508479, at *7 (Mass. Super. Aug. 15, 2017), quoting *G.S. Enterprises, Inc. v. Falmouth Marine, Inc.*, 410 Mass. 262, 272 (1991)."

**RESPONSE: Paragraph 198 states a legal argument to which no response is required.**

199.    The Doe Defendants intentionally interfered with Plaintiff's contract with Defendant Harvard, a third party.

**RESPONSE: Paragraph 199 states a legal conclusion to which no response is required. To the extent a response is required, Defendant lacks information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 199.**

200.    As is noted throughout this Complaint, Coach Stone was an employee of Harvard and as such, her employment was established through a contract.

**RESPONSE: Defendant admits that Stone was an employee of Harvard. Paragraph 200 otherwise states a legal conclusion to which no response is required.  To the extent a response is required, Defendant denies the allegations in Paragraph 200.**

201.    The Doe Defendants, upon information and belief, made their false and misleading statements to both *The Boston Globe* and Defendant Harvard with the intent of causing harm to Defendant Stone.

**RESPONSE: Paragraph 201 states a legal conclusion to which no response is required. To the extent a response is required, Defendant lacks information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 201.**

202.    Specifically with respect to Defendant Harvard, upon information and belief, the Doe Defendants acted with the intent for Defendant Harvard to end Coach Stone's employment.

**RESPONSE:  Paragraph 202 states a legal conclusion to which no response is required. To the extent a response is required, Defendant lacks information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 202.**

203.    The actions of the Doe Defendants undoubtedly harmed Coach Stone.  Harvard effectively ended Coach Stone's employment and made certain that she will not be able to coach again at the collegiate level.

**RESPONSE: Paragraph 203 states a legal conclusion to which no response is required. To the extent a response is required, Defendant denies the allegations in paragraph 203.**

204.    Based upon the foregoing, the Doe Defendants have intentionally interfered with Coach Stone's contractual relations in violation of Massachusetts law.

**RESPONSE: Paragraph 204 sates a legal conclusion to which no response is required.**

205.    As a direct and proximate result of said unlawful conduct, Plaintiff has suffered, among other things, emotional distress, financial losses, and reputational damage.

**RESPONSE: Paragraph 205 sates a legal conclusion to which no response is required.**

206.    As a further result of the actions of the Doe Defendants, Plaintiff has suffered severe emotional distress and turmoil, and immense trauma.

**RESPONSE:  Paragraph 206 states a legal conclusion to which no response is required.**

207.    As a result of the Doe Defendants' harm to Plaintiff, the Doe Defendants are liable to Plaintiff for damages in an amount to be determined but in no case less than $5,000,000.00.

**RESPONSE:  Paragraph 207 states a legal conclusion to which no response is required.**

**PRAYER FOR RELIEF**

Harvard denies that Plaintiff is entitled to the relief requested in Paragraphs numbered (i) through (xi) following Paragraph 207.

## AFFIRMATIVE DEFENSES

Harvard asserts the following affirmative defenses with respect to the causes of action alleged in the Complaint, without assuming the burden of proof or persuasion where such burden rests on Plaintiff. Harvard reserves the right to supplement its defenses and/or raise any additional defenses that may become available or appropriate.

### First Affirmative Defense

Plaintiff's claims are barred in whole or in part, to the extent Plaintiff failed to exhaust, timely and properly, all necessary administrative, statutory, and/or other jurisdictional remedies or requirements.

### Second Affirmative Defense

Plaintiff's claims are barred, in whole or in part, by the applicable statutes of limitations, and her untimely claims cannot be saved or extended by the continuing violations doctrine.

### Third Affirmative Defense

Plaintiff failed to establish a prima facie case of a violation of the Massachusetts Equal Pay Act, M.G.L. c. 149 § 105A or the Equal Pay Act, 29 U.S.C. § 206(d).

### Fourth Affirmative Defense

Plaintiff failed to establish a prima facie case of employment discrimination under M.G.L. c. 151B § 4 or 42 U.S.C. § 2000e.

### Fifth Affirmative Defense

Plaintiff's claims fail, in whole or in part, because she fails to identify an adequate comparator. Plaintiff was not similarly situated to the alleged comparators identified in the Complaint.

### Sixth Affirmative Defense

Plaintiff's claims fail because Defendant's actions were based on legitimate, non-discriminatory reasons.

### Seventh Affirmative Defense

Defendant has an affirmative defense to liability under both M.G.L. c. 149 § 105A and M.G.L. c. 151B pursuant to G.L. c. 149, § 105A(d).

### Eighth Affirmative Defense

Plaintiff's claims fail because Defendant's alleged actions were not improper in either motive or means.

### Ninth Affirmative Defense

Plaintiff has failed to mitigate her damages, if any, and therefore recovery by Plaintiff is barred in whole or in part.

### Tenth Affirmative Defense

Plaintiff's claims fail, in whole or in part, because her injuries, if any, were caused by the acts or omissions of a party or parties other than Harvard for whom Harvard is not legally responsible.

### Eleventh Affirmative Defense

Defendant has complied with all laws and regulations and otherwise satisfied its statutory obligations toward the plaintiff under all federal and state laws including 42 U.S.C. § 2000e, 29 U.S.C. § 206(d), M.G.L. c. 149 § 105A, and M.G.L. c. 151B.

### Twelfth Affirmative Defense

Plaintiff's claims under the Equal Pay Act are barred because one or more of the exceptions in 29 U.S.C. § 206(d)(1-4) apply.

### Thirteenth Affirmative Defense

Defendant denies that any protected activity played a role in the employment decisions related to Plaintiff, and states that even if one or more persons had harbored a retaliatory motive, the same decisions would have been reached anyway for legitimate and non-discriminatory reasons.

### Fourteenth Affirmative Defense

Plaintiff's claims under Title VII are barred because one or more of the exceptions or defenses in 42 U.S.C. §2000e-2(h) apply.

### <u>Fifteenth Affirmative Defense</u>

Plaintiff's claims are barred, in whole or in part, by the doctrine of laches.

Harvard reserves the right to amend its answer to the Complaint by adding defenses, affirmative defenses, counterclaims in reply, and/or cross-claims, as additional facts are obtained through discovery.

## **Jury Demand**

Harvard hereby demands a trial by jury on all claims and issues so triable.

Respectfully submitted,

**PRESIDENT AND FELLOW OF
HARVARD COLLEGE**,

By their attorneys,

May 9, 2025

*/s/ Leah S. Rizkallah*
Madeleine K. Rodriguez (BBO #684394)
Allison L. Anderson (BBO #687662)
Leah S. Rizkallah (BBO #696949)
Emily J. Nash (BBO #696460)
Maureen S. Berry (BBO #712841)
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210-2600
mrodriguez@foleyhoag.com
alanderson@foleyhoag.com
lrizkallah@foleyhoag.com
enash@foleyhoag.com
mberry@foleyhoag.com
Tel: 617-832-1000
Fax: 617-832-7000

**CERTIFICATE OF SERVICE**

I hereby certify that on May 9, 2025, the foregoing document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/ Leah S. Rizkallah*
Leah S. Rizkallah